BROOKS ET AL., ADMINISTRATORS, v. THE PITTS-
BURGH, CINCINNATI, CHICAGO AND ST. LOUIS
RAILWAY COMPANY.

[No. 19,321. Filed February 4, 1902.]

RAILROADS.—*Negligence.*—*Carriers.*—*Trespassers.*—Plaintiff's decedent
alighted from a train in the railroad switch-yard and proceeded
to walk in the space between the tracks of the carrier company
and those of defendant toward a public street and was struck by
an engine belonging to defendant company resulting in injuries,
causing his death. There was no evidence that decedent's peril
had been perceived by the men in charge of the engine. *Held,*
that decedent was a trespasser upon defendant's tracks, that de-
fendant did not owe him the duty to use ordinary care for his
protection and was not liable for negligently causing his death.
*pp. 63–69.*

SAME.—*Wilfulness.*—Decedent was passing along defendant railroad
company's private tracks and as he approached a public crossing
was struck by defendant's engine and received injuries resulting
in his death. The engine was being run at the rate of fifteen
miles an hour, in violation of the city ordinance, without sound-
ing the whistle or ringing the bell. The particular peril that re-
sulted in the death of decedent was a matter of but little more
than a moment's duration, and there was no evidence that de-
fendant's servants in charge of the engine had knowledge thereof.
*Held,* that the killing was not wilful. *pp. 69–71.*

From Marion Superior Court; *J. L. McMaster*, Judge.

Action by Laura D. Brooks and others, administrators,
against the Pittsburgh, Cincinnati, Chicago and St. Louis

Railroad Company for damages for the death of their decedent. From a judgment in favor of defendant, plaintiffs appeal. *Affirmed.*

*J. B. Kealing* and *M. M. Hugg,* for appellants.

*S. O. Pickens* and *R. F. Davidson,* for appellee.

GILLETT, J.—This action was brought by the appellants against the appellee for the alleged wrongful killing of their decedent. It is not necessary to set out even an abstract of the complaint, under our view of the case. It suffices to say upon this subject that the first two paragraphs of complaint contain substantive charges of negligence, and that the third paragraph of the complaint contains a charge that the killing of said decedent was wilful. Issues of fact were ultimately joined upon the several paragraphs of complaint, and the cause was submitted to a jury for trial. Upon the conclusion of the appellants' evidence, the court below, upon appellee's motion, charged the jury to find for the defendant. A verdict was returned for the appellee, and the court rendered final judgment in its favor. In the appropriate manner, the appellants have presented to this court for review the question as to the correctness of the instruction above referred to. This brings us to the evidence in the case. On the night of November 26, 1896, the appellants' decedent shipped a car load of stock to Indianapolis, over the line of railroad operated by the Cincinnati, Hamilton and Dayton Railway Company. He rode in the caboose of the train, as a passenger. Upon the arrival of the train at Indianapolis, the caboose was stopped at a point in the railroad yards about 500 feet west of a public street in said city known as State street. At that point the decedent alighted. The night was dark, and there was a high wind blowing from the north. The safest method of egress from the yards was to proceed eastward to State street, and he chose that method, walking along the space between the track that his train had lately passed over, and the track denominated as the "C. H. & D. main", until he arrived

at a point about fifteen feet west of State street. The next track to the north of the one last mentioned belonged to the appellee, and was denominated by witnesses in the case as the "north-bound Panhandle main." There were also three other tracks in the yards. All of the tracks were about twelve feet apart, measured from center to center, thus leaving a space about eight feet in width between each track. So far as the evidence suggests, there was, under the existing circumstances, a reasonably safe path, along the route chosen by the decedent, from the caboose to State street. There was an arc light on State street, twenty-four feet north of the "north-bound Panhandle main", but the plaintiffs' witness who testified to that effect further testified that he did not remember whether it was burning on that night or not. There must have been enough artificial light, however, for the decedent to see his way, because there was the light from the head-light of a switch engine that was being used to switch cars at a point to the east of him, some 350 or 400 feet from State street, and also the light from an ordinary head-light, upon the rear of the tender of a switch engine that was approaching State street from the west, on the "north-bound Panhandle main." Besides, the plaintiffs introduced a number of witnesses who testified that they observed the course of the decedent as he approached State street. The switch engine last mentioned was running backwards, and proceeded to and over State street at a rate of speed approximating twelve or fifteen miles an hour. There was no watchman upon the rear of this engine, although an ordinance of the city of Indianapolis so required. The engine was running faster than another section of the same ordinance permitted. It may be fairly claimed under the evidence that the jury might have concluded therefrom that the whistle was not sounded or the bell rung. A witness for the plaintiffs testified that when said engine was five or six car lengths east of State street he observed that the fireman, whose seat was on the south side of the engine, was leaning

over towards the engineer, and apparently talking to him, but an examination of the bill of exceptions has not disclosed to us any evidence as to whether either the engineer or fireman were or were not, observing the conditions upon or near State street as they approached it. One witness testified that he observed three men upon the street crossing, but whether they occupied positions where they were in any wise in danger from said approaching engine does not appear. There is evidence to the effect that there was nothing to prevent the engineer and fireman from seeing the decedent, had they looked. On the other hand, the evidence shows that when the decedent reached the point fifteen feet west of the street crossing, he could have had an unobstructed view of the track on which said engine was approaching for a distance of 200 feet to the west of State street. When the decedent was within fifteen feet of the State street crossing he turned in a northeasterly direction and proceeded in that direction, crossing the "C. H. & D. main", until he reached the edge of the planking that marked the southwestern intersection of said street with the said "north-bound Panhandle main." At that point he was struck in the face by a hand rail, on the rear of the tender of the engine that was approaching the crossing upon said track. He was thrown backwards and received injuries from which his death resulted. The manner of his approach is thus described by appellants' witness, Steading, whose testimony is wholly uncontradicted: "Q. I wish you would describe to the jury as nearly as you can, the way he was walking; that is, say from the time you first saw him and on up until the time that he was struck, the position of his head, or his face, if you can tell. A. Well, it seemed to me that he was just the same as a man in a study; he had his head kind of stooped over; he kind of had his head down; well, he didn't appear to realize what he was at, at all. Q. Wasn't that particularly so as he turned to

the north, facing the wind? A. Well, it might have been. I could see him plain, that his head was kind of down, and he kept swinging his arm rather fast, with his umbrella in it. I could notice him plain between me and the headlight." And upon cross-examination the further testimony of the witness upon this point was: "Q. He [the decedent] had left the caboose when you saw him? A. Yes, sir. Q. And was coming towards you, about 200 feet away? A. Yes, sir. Q. When he was 200 feet away, could you see the Panhandle engine coming? A. Yes, sir. Q. Was the light burning on that end of it? A. Yes, sir. Q. Was there anything between Mr. Brooks from the time you saw him there, some 200 feet west of the crossing, until the time he got struck, to prevent him seeing the engine, if he had looked? A. No, sir. Q. Did he look from the time you saw him until he was struck? A. No, sir. Q. He had his head down, seemingly in a study, from the time you saw him until he was struck? A. Yes, sir; he seemed like a man walking towards the wind,—to kind of protect himself from the wind. Q. And he didn't look west along the track at all from the time you saw him 200 feet away, until he was struck? A. No, sir; he didn't seem to." There is evidence that it was, and had been for a long time, the custom of the Cincinnati, Hamilton and Dayton Railway Company to discharge stockmen from its cabooses at various points west of State street, but what means of egress they took in leaving the yards does not appear. The evidence shows that the decedent was an active, intelligent man, and there is no hint in the evidence that he was not in the full possession of all of his senses. Some further evidence, not relating to matters now in controversy, was introduced. With this exception, this opinion contains a statement of the substance of the evidence in the case.

Appellants' learned counsel properly concede that, if this court holds that the decedent was a traveler upon the street, the appellee is not liable under paragraphs of the complaint

charging negligence. We presume that this concession is prompted by a realization of the fact that the decedent did not observe a traveler's duties. They cite many authorities, however, upholding the duty of a carrier of passengers to provide and maintain safe alighting places, and also safe means of egress therefrom, but they overlook the fact that the authorities they cite relate to the obligations of the carrier company.

This is not a case like *Louisville, etc., R. Co.* v. *Lucas,* 119 Ind. 583, 6 L. R. A. 193, and *Lucas* v. *Pennsylvania Co.,* 120 Ind. 205, 16 Am. St. 323. In those cases the original plaintiff therein was injured while proceeding in the nighttime along a platform extending from one railway station in the direction of another; each company had constructed the portion of the platform that was upon its own grounds, but it was so joined as to constitute an apparently continuous platform; the plaintiff in said cases received her injury upon the grounds of the Pennsylvania Company, having, as a passenger, alighted from a train of the Louisville, New Albany and Chicago Railway Company, for the purpose of proceeding to the railway station of the Pennsylvania Company, there to take a train on its railroad. This court, in the case last cited, very properly said: "She was not an intruder as to either, but was entitled to protection from both." The difference between the facts in the cases cited and in the case at bar is obvious. Here, the decedent alighted in a railway switch yard; there was nothing to suggest common ownership of the various tracks that were there, and he proceeded to the track of the appellee, where he received his fatal injury, not for the purpose of entering into the relation of carrier and passenger with it, but as a matter of mere convenience to himself.

In the case of *Evansville, etc., R. Co.* v. *Griffin,* 100 Ind. 221, 223, 50 Am. Rep. 783, Mitchell, J., in pronouncing the opinion of this court, said: "An owner may not by invitation, either express or implied, induce another to come

upon or pass over his premises, without keeping them in such condition of safety as to admit of his passing over by the means designated or prepared without injury, provided he uses due care. To make the owner or occupant liable for an injury received by one passing over his premises, something more than a mere passive acquiescence in the use of his land by others is necessary. So long as his lands are used by others, be it never so frequent, for their own convenience, he is not liable. But if, by some act or designation of his, persons are led to believe that a way or path over premises was intended to be used by travelers, or others having lawful occasion to go that way, then as to such persons the owner or occupant comes under an obligation to keep it free from dangerous obstructions or pit-falls which might cause them hurt. The inducement must be equivalent to an invitation, either express or implied; mere permission is not sufficient." This doctrine finds late expression in the case of *Cannon* v. *Cleveland, etc., R. Co.*, 157 Ind. 682.

Appellee had not invited the decedent to go upon its track; it had not even consented thereto, and it was not bound to mark its property lines as against the passengers of the Cincinnati, Hamilton & Dayton Railway Company. It may be that the decedent had no knowledge that he was committing a trespass, but even if he was but a technical trespasser, his administrators can assert but a wrongdoer's rights. At the basis of every well-grounded action for negligence must lie a legal duty to use care. *Evansville, etc., R. Co.* v. *Griffin*, 100 Ind. 221; *Faris* v. *Hoberg*, 134 Ind. 269, 39 Am. St. 261; *Daugherty* v. *Herzog*, 145 Ind. 255, 32 L. R. A. 837, 57 Am. St. 204; *Cannon* v. *Cleveland, etc., R. Co.*, *supra;* 1 Shearman & Redfield on Neg. §5, *et seq.* Moreover, if the appellee owed a duty, but did not owe it to the decedent, this action by his administrators will not lie. 1 Shearman & Redfield on Neg. §8; *Daugherty* v. *Herzog*, *supra; Cannon* v. *Cleveland, etc., R. Co.*, *supra*.

Treating the decedent as a trespasser upon the right of way of the appellee, as we must do if we grant the claim of appellants' counsel that he was not a traveler upon the street, and it results, as the appellee was entitled to the exclusive possession of its right of way at that point, that it did not owe to the decedent (there being no evidence that his peril had been perceived by the men upon the switch engine) a duty to use ordinary care for his protection, and, therefore, there is lacking an essential element of negligence. We are constrained to hold that there can be no recovery under either the first or the second paragraphs of the complaint.

It only remains to consider the rights of the appellants under the third paragraph of the complaint, that, as heretofore stated, contains a charge of a wilful killing. A trespasser is not an outlaw, and it is within bounds to state that it is actionable to wilfully injure such an one. *Cannon* v. *Cleveland, etc., R. Co., supra.* But, inasmuch as appellants' counsel are by no means conceding that there is no liability under the third paragraph of the complaint if the decedent was killed while upon the street, we prefer to examine the question as to whether the killing of decedent was wilful upon what is probably the true assumption, namely, that at the moment of the collision he had stepped from a place where he was a wrongdoer to a place where he could no longer be characterized as a trespasser.

This court has frequently quoted approvingly the following definition of wilfulness given by Mitchell, J., in *Louisville, etc., R. Co.* v. *Bryan,* 107 Ind. 51, 53: "Where one person negligently comes into a situation of peril, before another can be held liable for an injury to him, it must appear that the latter had knowledge of his situation in time to have prevented the injury. Or it must appear that the injurious act or omission was by design, and was such—considering time and place—as that its nature and probable consequence would be to produce serious hurt to some one.

To constitute a wilful injury, the act which produced it must have been intentional, or must have been done under such circumstances as evinced a reckless disregard for the safety of others, and a willingness to inflict the injury complained of. It involves conduct which is *quasi* criminal." Even a more pertinent statement of the law upon this subject is found in *Parker* v. *Pennsylvania Co.,* 134 Ind. 673, 679, 23 L. R. A. 552, where it is said: "Wilfulness does not consist in negligence. On the contrary, as illustrated by the cases of Bryan and of Mann, heretofore cited, the two terms are incompatible. Negligence arises from inattention, thoughtlessness or heedlessness, while wilfulness cannot exist without purpose or design. No purpose or design can be said to exist where the injurious act results from negligence, and negligence can not be of such a degree as to become wilfulness." See also *Terre Haute, etc., R. Co.* v. *Graham,* 95 Ind. 286, 48 Am. Rep. 719, and *Cleveland, etc., R. Co.* v. *Miller,* 149 Ind. 490, for forceful statements of the law upon this subject.

While we grant that the act of the appellee would have amounted to negligence, but for the reason heretofore stated, yet we deem it clear, beyond a peradventure, that the act of appellee was not wilful.

The result of running a locomotive over the crossing in question, at the rate of speed of fifteen miles an hour, without sounding the whistle or ringing the bell, would not ordinarily be to injure travelers upon the street, because their own instincts of self preservation would cause them to be on their guard in crossing the railroad track. The case, therefore, does not come within the definition of wilfulness declared in *Louisville, etc., R. Co.* v. *Bryan,* 107 Ind. 51, that there must be an express intent, or that the injurious act or omission must be such that "its nature and *probable* consequence would be to produce serious hurt to some one."

It must be borne in mind that while the evidence tends to prove that the appellee's servants were heedless of the rights

of persons who might be upon the crossing, yet that there is no evidence that such servants had knowledge that any person was upon or near the crossing. Indeed, it may be inferred from the evidence that they passed over the crossing without knowledge that an accident had happened. It must be remembered, also, that the particular peril that eventuated in the death of the decedent was a matter of but little more than a moment. The switch engine, if it was approaching the crossing at the rate of fifteen miles per hour, was running twenty-two feet per second, and even the last second before his injury afforded time sufficient to carry decedent from a place of comparative safety to a situation of imminent peril. There was, therefore, no opportunity after decedent's danger of harm was imminent, even if he was perceived by appellee's servants upon the switch engine, for their minds to change from an attitude of heedlessness to that of vigilance.

The question presented to the trial court, upon the close of appellant's evidence, was, under the circumstances, plainly one of law, and its act, in directing a verdict in appellee's favor, was proper.

The judgment of the court below is affirmed.