HASKELL AND BARKER CAR COMPANY *v.* KAY.

[No. 10,121.  Filed May 29, 1918.  Rehearing denied November 26, 1918.  Transfer denied March 7, 1919.]

1.  MASTER AND SERVANT.—*Workmen's Compensation Act.—Wilful Misconduct.—Burden of Proof.*—Under §8 of the Workmen's Compensation Act (Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1918), providing that no compensation shall be allowed for injury or death due to the employe's wilful misconduct, including wilful failure or refusal to use a safety appliance, and placing the burden of proof on the defendant employer, the master, to defeat a claim for compensation for the death of an employe on the ground of wilful misconduct, must establish affirmatively that decedent should have used a different safety appliance than the one he did, and that his failure to do so amounted to wilfulness within the meaning of the statute.  p. 552.

2.  MASTER AND SERVANT.—*Workmen's Compensation Act —Wilful Misconduct.—Failure to Use Safety Appliance.*—Under §8 of the Workmen's Compensation Act (Acts 1915 p. 392, §80201 *et seq.*

Burns' Supp. 1918), providing that no compensation shall be allowed for injury or death due to the wilful failure or refusal to use a safety appliance, a mere failure to use the proper safety appliance will not defeat a claim for compensation, unless such failure amounts to wilfulness or a refusal within the meaning of the statute, and whether the conduct of the workman in any circumstance amounts to a wilful failure or refusal is a mixed question of law and fact. p. 552.

3. MASTER AND SERVANT.—*Workmen's Compensation Act.—Appeal. —Scope of Review.*—Although the determining of the facts from the evidence is usually the exclusive province of the Industrial Board in a proceeding for an award, the application of the Workmen's Compensation Act (Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1918) to the facts by the board is reviewable by the court on appeal. p. 553.

4. MASTER AND SERVANT.—*Workmen's Compensation Act.—Appeal. —Evidence.—Scope of Review.*—Where the Industrial Board by its award determined the issue of wilfulness in favor of the petitioner, the court on appeal, in reviewing the board's action, must consider only the evidence that tends to support the award and those permissible inferences in harmony therewith. p. 553.

5. MASTER AND SERVANT.—*Workmen's Compensation Act.—Wilfulness.—Evidence*—In a proceeding for compensation under the Workmen's Compensation Act (Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1918) for the death of a servant, where the employer contended that death was due to his wilful misconduct in failing to use a certain safety device, evidence *held* to establish that death was due to the servant's negligence rather than wilful failure to use the safety device in question. p. 553.

6. MASTER AND SERVANT.—*Workmen's Compensation Act.—Wilful Misconduct.—Wilful Failure or Refusal.*—In the expression "wilful failure or refusal," as used in §8 of the Workmen's Compensation Act (Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1918), providing that no compensation shall be allowed for injury or death to the employe's "wilful failure or refusal" to use a safety appliance, the word "or" is used in an appositive sense and the words "wilful failure" and "refusal" are equivalent. p. 556.

7. MASTER AND SERVANT.—*Workmen's Compensation Act.—Employe's Wilful Misconduct.—Refusal to Use Safety Appliance.*— Where a servant was employed in the operation of a power drilling machine used to drill holes in pieces of iron of various sizes and lengths, for which work the master provided several adequate safety devices for the protection of the operator, the one to be used depending on the nature of the work to be done, and the servant was killed as a result of failure to use the proper safety

device while drilling holes in metal bars, the court on appeal, in reviewing an award under the Workmen's Compensation Act (Acts 1915 p. 392, § 80201 *et seq.* Burns' Supp. 1918) for the servant's death, cannot say as a matter of law that such failure amounted to wilful refusal to use an adequate safety appliance in the absence of evidence to establish any specific order, direction or rule of the master, requiring employes to use a specific kind of safety device for the work at which the servant was killed, as well as decedent's knowledge thereof. p. 557.

From the Industrial Board of Indiana.

Proceedings for compensation under the Workmen's Compensation Act by Lena Kay against the Haskell and Barker Car Company. From an award for applicant, the defendant appeals. *Affirmed.*

*Collins & Collins,* for appellant.

CALDWELL, C. J.—The Industrial Board awarded appellee compensation as the dependent widow of her deceased husband, Charles Kay, appellant's employe. At the hearing before the full board the parties stipulated to the record an agreement in part to the effect that on September 8, 1916, decedent received a personal injury by accident arising out of and in the course of his employment, resulting in his death on that day. The sole question presented for our determination is whether it must be said from the evidence that decedent's injury, and consequently his death, was due to his own wilful misconduct within the meaning of the Workmen's Compensation Act. Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1918.

The evidence bearing on this question was to the following effect: Decedent had been in appellant's employ, performing service in and about its car factory for more than forty years. He was a man of fair intelligence, and of good character and habits.

He was not a machinist. At the time of his injury he was operating a power drilling machine used to drill holes in pieces of iron of various sizes and lengths. He had had several years' experience, all told, in operating such a machine. The drill bits were of twist variety, something like an auger. In operating this machine there was danger that at certain stages of the work the piece of iron into which holes were being drilled would run up on the stem of the drill, unless restrained, and fly or whirl around with the drill in its revolutions, and thus imperil the operator. It seems to be conceded that in this manner decedent met with his fatal injury. At the time of his injury he was drilling holes in certain pieces of iron about an inch thick, three inches wide and two feet long, weighing from twelve to fifteen pounds, to be used as car levers when completed.

By reason of the danger of the pieces of iron climbing the stem and whirling around while being drilled as above indicated, the company had designed two forms of safety device for use in the plant. One of these, known as a clamp, consisted of a flat piece of iron bent to consist of two horizontal plates extending in opposite directions from a perpendicular plate connecting them. When this form of safety device was in use it was fastened to the base of the machine by means of a bolt through the one horizontal plate held secure by means of a nut. The work being drilled rested on the base against the perpendicular plate, while the other horizontal plate extended or clamped over it. Thus the work being drilled was prevented from either whirling or climbing the stem. The other form of safety device, known as a strap, consisted of a perpendicular plate of iron bolted to the

base of the machine against which the work being drilled rested, and thus was prevented from whirling. The clamp was used for some kinds of work, and the strap for other kinds. The workmen at times, and apparently on their own motion, used a third form, known as a plug. It was merely a bolt with a sort of hook on the upper end of it, which the workman inserted in a hole in the base, and which extended about four inches above it. It prevented whirling, but not climbing. Each of these safety devices was readily adjusted to the base or detached therefrom, the clamp, however, requiring more time than the others. It is apparent that the clamp when it could be used was the most effective form of device. The others prevented whirling except in case of climbing. The plug was safe for some kinds of work, and was safe for the kind of work Kay was doing when hurt, unless the work should climb the stem, as it apparently did on the occasion involved here. The workmen in appellant's plant, including Kay, were paid by the piece, and there was evidence that they sometimes used the plug instead of the clamp on account of the time saved in making the attachment. Shortly before Kay was hurt he was drilling work that did not require the use of the clamp. The foreman requested him to drill the pieces of iron above mentioned, four in number. In doing the work he used a plug. The evidence was to the effect that he should have used a clamp in order that the work might be safely done.

The evidence bearing on the question whether appellant required the workmen to use any certain form of safety device for any certain kind of work, or whether there was any definite rule or order on that subject, or whether the matter was left to the judg-

ment and discretion of the workmen, and what Kay knew respecting these questions, must be determined from a consideration of the testimony of the foreman. The following questions and answers fairly reflect the record bearing on those subjects: Being asked whether he had ever instructed Kay about the use of the guard, the foreman answered: "Why, whenever I caught him drilling anything where there was any danger of flying around, I would give him the 'dickens,' and I have told him time and time again never to do any work without putting on their guards where there was any danger of their work flying around. Q. Now, was it customary to use the clamps or those guards? A. Why certainly it was customary to use them on any work where there was any danger of the work flying around the drill catching or throwing around. Q. At any time? A. At any time at any kind of work. Q. At any time did you ever observe he was not using the clamps, would you—what would you do? A. I would give him the dickens, give him a talking to, and make him put them on. Q. Did Charley know what the clamps were for? A. Why to be sure he did. He used them time and time again. He used them whenever they were drilling levers. Q. Did Mr. Kay, the decedent, know what the purpose of these clamps were? A. Yes, sir. Q. Did you ever tell him not to do the work unless the clamps were on? A. I have instructed them, not only Mr. Kay, but all of the drillers I have had under me to never do any kind of work where there was any danger of the piece flying around without having clamps on. Q. Do you remember of ever seeing Charley Kay or any other man in your shop doing the same drilling as this without the use of clamps? A. I have caught them

at it, and I have made them stop their machines and put the clamps on. Q. Do you recall of ever requiring them to stop? A. I always told them to stop when I saw them that they did not have the clamps on, and so they could put their clamps on to make it safe. Q. Now, Jake, are these machines intended to be operated—are these pieces intended to be drilled without the clamps on them? A. No, sir. Q. Did Charley Kay know that? A. Certainly. Q. And that plug, in your judgment, would not it be safe to stop that handle from going around? A. Ordinarily it should be. Q. Just as good as that clamp? A. No, it is not just as good as that clamp * * *. Q. Jake, you have seen these men use these small plugs? A. Yes. Q. You have never forbid them using those plugs? A. Yes, sir. Q. Did Charley Kay ever tell you he would not use a safety device? A. No, sir. Q. Did you ever tell Charley Kay to use one and he refuse to do it? A. No, sir. Q. Did you ever see Charles Kay or any other man working there without a clamp when they should have used a clamp? A. Yes, sir, I have. Q. Without reprimanding or without scolding them? Q. Well, I would generally give them a scolding if I saw them, and told them to put on their clamp. Q. But that plug is a safety, isn't it. A. It is in one sense of the word. Q. And those plugs are very safe for some classes of work? A. They are for some. Q. Well, they use plugs on all kinds of work, don't they? A. Well, yes, I would not say on all kinds, but they have to use them. Q. When you are drilling the kind of a lever that Charley was drilling, is a plug a safe instrument for all purposes? A. I should have the clamp on.''

A few minutes after the accident, the foreman came to Kay's machine and found him sitting down, bent over, with indications that he had been hurt. He asked Kay what was the matter, and the latter said the lever swung around and hit him. The foreman, having examined the situation and appearance of the machine and the work, asked Kay how it was possible for the lever to swing around, and declared that he did not think that the lever could swing around the way it was situated on the machine. At this time the foreman discovered that Kay had been using a plug in place of a clamp, but there was no evidence that this subject was at that time discussed by them, or that anything was said on the subject of a plug being used rather than a clamp.

Section 8 of the Workmen's Compensation Act, *supra,* is in part as follows: "No compensation shall be allowed for injury or death due to the employe's wilful misconduct, including  *   *   *  wilful failure or refusal to use a safety appliance  *   *   * . The burden of proof shall be on the defendant employer."

Under this statute, to defeat appellee's claim for compensation, it was incumbent on appellant to establish affirmatively that decedent should have

1. used a clamp instead of a plug, and that his failure to do so amounted to wilfulness within the meaning of the statute.

Two safety appliances are involved here: The clamp and the plug. The latter was used; the former was not used. The evidence was sufficient to

2. sustain a finding, if made, that reasonable care required that the former rather than the latter be used. We do not believe that a workman satisfies the statute merely by using a safety appliance. The

statute contemplates the use of a safety appliance proper for the work being done. A mere failure to use the proper safety appliance, however, will not defeat a claim for compensation. To have such effect the failure must amount to wilfulness, or to a refusal within the meaning of this statute. Whether the conduct of the workman in any circumstance amounts to a wilful failure or to a refusal is a mixed question of law and fact. It involves: First, the determining of the facts from the evidence, including legitimate inferences, which usually is the exclusive province of the board; and, second, the application of the law as represented by the statute above quoted to such facts. In this latter field the action of the board is reviewable by this court on appeal. *Inland Steel Co.* v. *Lambert* (1917), 66 Ind. App. 246, 118 N. E. 162. Since the board by its award has determined the issue of wilfulness in favor of appellee, this court in reviewing the action of the board must consider only the evidence that tends to support the award, and with such evidence only those permissible inferences in harmony therewith.

We proceed to analyze the evidence as above set out bearing on the issue of wilfulness. It is apparent from the evidence that the plug rather than the clamp could be used with reasonable safety in some forms of work, and in other forms of work it is a fair inference that reasonable safety required the use of the clamp. It is apparent also that appellant contemplated that in certain forms of work, including the work being done by decedent at the time when he was injured, the clamp should be used. The evidence, however, is not conclusive that

decedent knew that fact. We are aware that the foreman testified in substance that decedent knew that the particular kind of work which he was doing was not intended to be done without the use of the clamp. This testimony, however, was in the nature of a conclusion or the expression of an opinion, and we therefore do not regard it as conclusive as to decedent's knowledge. There was no evidence that appellant had formulated any rule or issued any general or special order that for the specific kind of work involved here a clamp, and only a clamp, should be used. There was evidence that decedent had been directed to use the clamp where there was danger of the work whirling, but such evidence does not exclude an inference that it was left to decedent to determine by the exercise of his own judgment whether at any time he was confronted with such a situation. There was evidence also that it was customary to use the clamp where there was danger of the work flying around, but here also the evidence does not exclude the assumption that the workman determined when such a situation existed, and consequently when such custom governed. The foreman testified that he always made decedent put the clamps on when he discovered that he was not using them, but the foreman could not have meant such evidence to include all forms of work, since he testified also that some work did not require the clamp, and that in some work the clamp could not be used. The foreman testified also that decedent always used a clamp when he was drilling levers, but if this be true, his failure to do so on the occasion involved here would not necessarily amount to anything more serious than negligence. There was some evidence, as above indicated,

on the subject of instructions and orders given to workmen generally, but such evidence does not necessarily establish that such instructions and orders were given to decedent. The foreman testified also, as appears above, that decedent at no time said he would not use a safety appliance, and at no time refused to do so.

From the evidence as above outlined, we believe that it must be said that appellant failed to establish conclusively each and all of the following: Assuming that it was appellant's specific purpose and intention that the clamp be used to the exclusion of all other safety appliances on the form of work that decedent was doing; that he had knowledge of that fact; that it was not left to the judgment and discretion of the workmen to determine, under the advice and supervision of appellant, what specific form of safety appliance should be used for any particular kind of work; that decedent knew that by the use of the plug rather than the clamp there was any great danger of the work whirling and injuring him. As indicated by our statement of the evidence, the foreman himself, in view of the surroundings immediately after the accident, expressed his astonishment that the lever had swung around, considering the manner in which Kay had adjusted his work to the drilling machine.

Under such circumstances can it be said that it was conclusively established that decedent was guilty of "a wilful failure or refusal to use a safety appliance" in using the plug rather than the clamp, and so that this court as a matter of law may overturn the decision of the board?

We think it apparent under the statute that if decedent merely failed to use a proper safety appli-

ance, appellee's claim to compensation is not thereby defeated. A mere failure to do a certain thing does not involve action or omission more serious in nature than negligence. To defeat appellee's claim it must appear that such failure was wilful, or that there was a refusal. In our judgment the word "or" is used in the statute in an appositive sense, or merely as an alternative expression of the same idea; that it introduces the word "refusal" merely in explanation of the phrase "wilful failure," and that the two expressions are practically equivalent in meaning.

Our courts in common-law actions draw a clear distinction between wilfulness and negligence. Thus: " 'Wilfulness does not consist in negligence. On the contrary  *  *  *  the two terms are incompatible. Negligence arises from inattention, thoughtlessness or heedlessness, while wilfulness cannot exist without purpose or design.' " *Brooks* v. *Pittsburgh, etc., R. Co.* (1902), 158 Ind. 62, 62 N. E. 694. Wilful injury involves a deliberate purpose not to discharge some duty necessary to safety. It implies obstinacy, stubbornness, design, set purpose, and conduct *quasi*-criminal in nature. *Louisville, etc., R. Co.* v. *Bryan* (1886), 107 Ind. 51, 7 N. E. 807; *Southern R. Co.* v. *McNeeley* (1909), 44 Ind. App. 126, 88 N. E. 710, 714.

Of the term "serious and wilful misconduct" as used in compensation acts, it is said that: "It involves conduct of a quasi-criminal nature, the intentional doing of something either with the knowledge that it is likely to result in serious injury or with a wanton and reckless disregard of its probable consequences." *Burns' Case* (1914), 218 Mass. 8, 105 N. E. 601, Ann. Cas. 1916A 787. Of the term "wilful mis-

conduct'' as used in the California statute, the Supreme Court of that state said: ''Wilful misconduct means something more than negligence. It does not include every violation or disregard of a rule. * * * But it cannot be doubted that a workman who violates a reasonable rule made for his own protection from serious bodily injury or death is guilty of misconduct and that where the workman deliberately violates the rule, with knowledge of its existence and of the dangers accompanying its violation, he is guilty of wilful misconduct.'' *Great Western Power Co.* v. *Pillsbury* (1915), 170 Cal. 180, 149 Pac. 35.

In determining the question of wilfulness here, we do not believe that we should be justified in reviewing the decided cases with their respective and characteristic facts. If the evidence here were sufficient to justify a finding that appellant had ordered or directed decedent to use a clamp on the particular kind of work which he was doing when injured, or if by virtue of a custom or otherwise decedent knew that only such an appliance should be used on that kind of work, and if the board had so found, and if under such circumstances and with such knowledge decedent had failed to use such appliance, then under ordinary circumstances, and unless there was something exceptional in the situation, we should feel impelled to sustain a finding of the board, if made, that such a failure was wilful. But the evidence being insufficient to establish conclusively the existence of any such a specific order or direction, or any rule to that effect, or at least being very uncertain and indefinite on that subject, as well as respecting decedent's knowledge, we are not ready to hold as a matter of

law, and against the finding of the board, that decedent's failure to use a clamp was characterized by obstinacy or stubbornness, or a reckless disregard of consequences, and therefore that such failure was wilful. The evidence being uncertain as indicated, and decedent shortly prior to his injury having been engaged in drilling where a clamp was not required, and being directed by the foreman to do a small job that did require a clamp according to appellant's view of the matter, we cannot say as a matter of law that his conduct amounted to anything more than thoughtlessness. We do not feel that the situation justifies us in going any further than this, even on the assumption that decedent knew that the use of the plug was attended by a degree of danger. As we have said, however, the evidence does not compel a deduction any stronger than that the choice of appliances in any situation was committed to decedent's discretion. At any event, we cannot say as a matter of law that his conduct was anything more reprehensible than mere negligence. The following are instructive, although not exactly in point: *Wick* v. *Gunn* (1917), (Okla.) 169 Pac. 1087; *Kent* v. *Boyne City Chemical Co.* (1917), 195 Mich. 671, 162 N. W. 268; *Diestelhorst* v. *Industrial Acc. Com.* (1917), 32 Cal. App. 771, 164 Pac. 44; *Clem* v. *Chalmers Motor Co.* (1914), 178 Mich. 340, 144 N. W. 848, L. R. A. 1916A 352, 4 N. C. C. A. 876; *Great Western Power Co.* v. *Pillsbury, supra; Nickerson's Case* (1914), 218 Mass. 158, 105 N. E. 604, Ann. Cas. 1916A 790; *Gignac* v. *Studebaker Corporation* (1915), 186 Mich. 574, 152 N. W. 1037; *Johnson* v. *Marshall, Sons & Co.* (1906), 8 W. C. C. 10; *Darbon* v. *Gigg* (1904), 7 W. C. C. 32; *Brooker* v. *Warren* (1906), 9 W. C. C. 26; *Casey* v.

*Humphries* (1913), 4 N. C. C. A. 881, 6 B. W. C. C. 520.

As cases present themselves for adjudication under compensation acts, with facts in endless variety, courts sometimes find it difficult to determine just what sort of a problem is involved, as, for instance, in a given case, whether the question is one of wilfulness, or whether the injury arose out of the employment. Thus an employe may be injured while performing his work in a negligent, reckless, unauthorized or forbidden manner, or by reason of some act outside of and not connected with his employment, or by reason of some added peril to which the employe by his own conduct has unnecessarily exposed himself. In any such case, the board primarily and the court ultimately is charged with the duty, sometimes difficult, of determining the exact nature of the involved question. Here, as we have said, the parties agreed before the board that decedent received his injury by an accident arising out of his employment, and that the question here is one of wilfulness. On that question the burden was on appellant by the express provisions of the act above quoted. Our attention has been called to *Inland Steel Co.* v. *Lambert, supra,* and to some language we there used. In that case, as disclosed by the opinion, we regarded the involved question whether the injury arose out of the employment, on which question the burden rests on the claimant. What we said there on the subject of the possible weight of facts not found must be considered in the light of the question involved.

In the case at bar the award is affirmed.

Felt, P. J., Batman and Hottel, JJ., concur.

Ibach and Dausman, JJ., dissent.

DISSENTING OPINION.

IBACH, J.—I think it proper to present my views of this case, which differ from those of the majority of the court. On the hearing before the board many facts essential to a recovery were conceded by appellant, so that the controlling question before the board was whether or not the injury and death were due to decedent's wilful misconduct. The board by its finding and award has answered such question in the negative.

The sole question for our determination is whether or not there is any evidence from which such conclusion may be reasonably inferred.

The statute provides: "No compensation shall be allowed for any injury or death due to the employe's wilful misconduct, including intentional self-inflicted injury, intoxication, and *wilful failure or refusal to use a safety appliance* or perform a duty required by statute." §8, Acts 1915 p. 392, §80201 Burns' Supp. 1918.

The uncontradicted facts upon this point as disclosed by the evidence are in substance as follows: Appellee's husband, herein referred to as decedent, was a man of mature years, with fair intelligence. He was employed by appellant to operate a drill press. He was familiar with this kind of work, and had operated drill presses for appellant for a number of years. At the time of his injury he was engaged in drilling holes in certain levers that went into the cars built by appellant. Appellant provided different safety devices for the protection of the operator and other workmen about such drills. A device, designated a "clamp guard," was provided and kept on the drills for use by the operators when "there was danger of the piece (being drilled) flying around."

In drilling small work there was no danger of the drill catching in the work, the work running up on the drill and swinging around. The levers upon which decedent was working at the time of his injury were of this class. A device provided by the workmen and designated as a "strap bolt" was frequently used by the workmen in drilling heavy work, and such a device was being used by decedent at the time of his injury. The clamp guard was attached when needed by two bolts, requiring from two to three minutes to put it on while the strap bolt could be dropped in a hole on the drill plate without loss of time. Both served the same purpose, except when the work was liable to raise up on the drill.

Decedent had been instructed and directed not to do any work without the clamp guard when there was danger of the work flying around, and he had been scolded and reprimanded when found not using them and made to put them on, and this was done on many occasions. He knew of the danger connected with drilling the class of work at which he was engaged when injured without using the clamps; that by reason of their length and weight there was danger of the levers flying around. Appellant required all of its drill-press employes to use the clamp guard when drilling work about which there was danger of it flying around. The only evidence indicating the manner in which decedent was injured was a statement made by him immediately after the injury, that "the lever swung around and hit me."

Appellant's foreman testified: "Whenever I caught him (decedent) drilling anything where there was danger of it flying around, I would give him the dickens, * * * gave him a talking to and made him

put them (clamps) on. The clamps were kept by his machine, very handy. He used them often and knew what they were for. I have caught the men doing the work without clamps and I have stopped them and made them put them on.''

At the time of the accident, and for about a year prior thereto, appellant had in its employ a man whose time was wholly devoted to safety work in its plant and to educating the workmen to eliminate dangerous practices. He stated: ''In the use of safety appliances we try to use diplomacy. We are not in favor of firing men. We try to educate them to observe safety rules. That is what we are doing for them. We have laid men off for a day or two or a week for breaking safety rules. We fired a foreman about two or three weeks ago for breaking a safety rule; in not requiring men to obey   *   *   *   the use of safety appliances. The rules were in force in the shop where Charles Kay was hurt. I go through the department every day, morning and afternoon. If I saw a man not working with his goggles or breaking a safety rule I go to the man myself and talk to him. I have talked to men right in this department. That is a part of my work. I would not say that I fired men for not using this particular safety device, but I have been after the men in this particular department for not using goggles.''

It further appears from the evidence that the instructions relating to the use of safety devices were generally obeyed until the men were paid by piece work, after which time there was a greater tendency to violate such rules, probably due to the fact that some time was consumed in attaching the safety device and they did not want to lose the time.

As to what constitutes "wilful misconduct" as it is used in the statute in its broad sense we are not especially concerned, for our statute in this respect, unlike most of the other states, contains the express provision that wilful misconduct shall include "wilful failure or refusal to use a safety appliance." The question is therefore narrowed to whether or not there is evidence properly in the record justifying the conclusion of the board that the decedent did not wilfully fail or refuse to use a safety appliance.

Appellant furnished and kept handy a special device or guard for decedent's use when drilling work in which there was danger of its flying around. The kind of work he was doing when injured was this class of work, and, as the evidence shows, did fly around and strike decedent, causing his injury and death. Decedent knew that the guard was provided for this kind of work, and knew that it was dangerous to drill the levers without using the clamp guard provided by appellant, but instead used the "strap bolt" provided by himself, against which he had been warned on several occasions and made to put the clamp guard on. I can but interpret decedent's conduct in one way, and that is he concluded he could save some time by omitting to attach the clamp guard and took his chances to perform the work without it, knowing all the while of the probable consequences that might follow, which conduct shows as a matter of law a wilful failure to use a safety appliance. To my mind the fact that there was some evidence tending to show that at times the employes had been permitted to exercise their own judgment when to use the safety device furnished by themselves and when to use the particular one furnished by appellant can-

not affect this particular case, for there is no dispute about the fact that the device was furnished to be used in the kind of work at which decedent was then engaged, and that he knew the particular work at which he was then engaged would "fly around and strike him in the absence of that special device, and that he had been instructed to use it when engaged in that particular work." In other words, there was no discretion granted the decedent, either directly or inferentially, as to the use of the particular safety device furnished by appellant when he was engaged at the particular kind of work he was doing when injured. And this appears clear and certain from the answer itself given by the decedent when asked how the accident happened, viz., "the lever flew around and hit me. I did not have the clamp on." The entire record in this case shows without conflict that decedent was specifically ordered and required to use the particular clamp and no other device in doing the work he was engaged in doing when injured; that he wilfully failed to use such device for such work; and that his failure so to do was the sole cause of his injuries. Consequently, under our statute, such refusal prevents the allowance of compensation. *Lines* v. *Pacific Co.*, 2 Cal. I. A. C. Dec. 837; *Donnachie* v. *United Co. Collieries, Ltd.*, S. C. 503 (Ct. of Sessions 1910); *Brooker* v. *Warren* (1906), 9 W. C. C. 26; *Gordon* v. *San Francisco Rys.*, 1 Cal. I. A. C. Dec. 232; *Waddell* v. *Coltness Iron Co.* (1912), 6 B. W. C. C. 306; *Guthrie* v. *Boase Co.*, 3 F. 769; *Smith* v. *Corson* (1915), 87 N. J. Law 118, 93 Atl. 112.

I think the award of the Industrial Board should be reversed.

Dausman, J., concurs.