## GENERAL AMERICAN TANK CAR CORPORATION *v.* BORCHARDT.

[No. 10,441.   Filed March 3, 1919.]

1. MASTER AND SERVANT.—*Workmen's Compensation Act.—Servant's Wilful Misconduct.—Burden of Proof.*—To defeat a claim for compensation under the Workmen's Compensation Act (Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1918) for the death of a servant on the ground that death was due to his wilful refusal to use a safety appliance, the burden is on the master to establish affirmatively that it furnished a proper safety appliance, and that decedent's failure to use the same amounted to wilfulness within the meaning of §8 of the act, providing that no compensation shall be allowed for an injury or death due to the employe's wilful misconduct, including wilful failure or refusal to use a safety appliance.   p. 585.

2. MASTER AND SERVANT.—*Workmen's Compensation Act.—"Wilful Misconduct.".*—Wilful misconduct means a deliberate purpose not to discharge some duty necessary to safety, and it implies obstinacy, stubbornness, design, set purpose, and conduct *quasi* criminal in nature.   p. 587.

3. MASTER AND SERVANT.—*Workmen's Compensation Act.—Servant's Wilful Misconduct.*—Where a painter was killed by poisonous fumes while painting inside of a tank car, compensation will not be denied on the ground that death was due to wilful misconduct within the terms of §8 of the Workmen's Compensation Act (Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1918), because he failed to use a respirator in violation of a rule adopted by the master, where the respirator furnished was defective.   p. 587.

4. MASTER AND SERVANT.—*Workmen's Compensation Act.—Amount of Award.—Partial Dependents.*—Where deceased, whose daily wage had been about $5, contributed to the support of his dependent mother $15 a week, or five-eighths of the maximum weekly wage fixed by §40 of the Workmen's Compensation Act (Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1918), for the purpose of computing compensation, she was entitled to an award of $8.25 a week for 300 weeks, with burial expenses, under §37 of the act, providing that the weekly compensation payable to a partial dependent shall be in the same proportion to the weekly compensation for persons wholly dependent as the amount contributed by the deceased employe to his partial dependent bears to his annual earnings at the time of the injury. p. 589.

From the Industrial Board of Indiana.

Proceedings for compensation under the Workmen's Compensation Act by Bertha Borchardt against the General American Tank Car Corporation. From an award for applicant, the defendant appeals. *Affirmed.*

*W. J. Whinery,* for appellant.
*McAleer, Dorsey & Gillett,* for appellee.

McMAHAN, J.—The appellee filed her petition before the Industrial Board, and alleged that her son, Edward Borchardt, died on February 13, 1918, as the proximate result of a personal injury received by him by reason of an accident arising out of and in the course of his employment by the appellant at its plant in East Chicago, Indiana; and that said Edward left surviving him as his only dependents the appellee, his mother, Edna Borchardt, his sister, aged eighteen years, and William Borchardt, a brother, aged sixteen years.

The appellant filed answer in two paragraphs. The first was a general denial; while the second alleged that the death of said Edward Borchardt was due to

his wilful misconduct in failing and refusing to use a safety appliance provided for him to use in the performance of his duties.

A hearing was had before one member of the board, who made an award of $13.20 per week for 300 weeks and $100 for burial expenses and costs. Upon a review before the full board, the award was reduced to $8.25 per week and $100 for burial expenses, and costs.

This award was made by two members only; the third member joined in the finding of facts, but not in the award.

The facts as found by the full board are: That on or prior to February 13, 1918, Edward Borchardt was in the employ of appellant as a painter at an average weekly wage in excess of $24.00; that said Edward Borchardt was employed by the defendant to paint the inside of steel tank cars; that the defendant had employed for such service as many as six other different painters; that the said tank cars had an opening on the top or dome, approximately fifteen inches in diameter, and an opening, or outlet, on the bottom; that these two openings are the only ones in steel tank cars of the design and character upon which said Edward Borchardt was employed as a painter; that in the painting of said cars the defendant always required two painters to be engaged upon the same car, one to work on the inside, the other to remain on the top of the dome so as to assist the inside painter to withdraw therefrom when safety required; that, because of poisonous fumes given off by the paint used in painting the inside of said steel tank cars, the defendant had adopted a rule that the inside painter should always use a respirator, or a

NOVEMBER TERM, 1918.        583

General, etc., Tank Car Corp. *v.* Borchardt—69 Ind. App. 580.

device intended to furnish the painter with outside
air; that such respirator was so constructed that the
painter held in his mouth a device through which he
breathed the air, but his nostrils were closed by means
of nose pincers and a hose protruded through the
dome into the outside air, and by this means the
painter was furnished pure air from the outside; that
even by the use of such respirator, a painter could
not safely remain inside the tank and at his work
for more than eight minutes at a time; that, notwith-
standing the rule of the defendant, its painters, prior
to February 13, 1918, had frequently painted the in-
side of its tank cars without the use of a respirator;
that the evidence does not show that the defendant
ever had knowledge of such practice on the part of
its painters, excepting one occasion when a foreman
discovered one of the painters painting on the inside
of a tank car without the use of a respirator; that,
at said time, the foreman at once directed the painter
to withdraw from the car, severely reprimanded him,
and advised him that if he were again apprehended in
the act of violating said rule he would be discharged;
that the defendant had procured and was using for
the first time on the 12th and 13th of February, 1918,
a new paint, or a paint of a new composition, for the
painting of the inside of tank cars; that the evidence
does not show that said paint was more poisonous
than that previously used, and does not show that
the defendant's foreman advised its painters that
it was any more poisonous; that on the evening of
February 12, 1918, defendant's foreman requested
said Edward Borchardt and a coemploye to return
for work on that night and to dry out three tank cars,
and, if they had sufficient time, to paint them on the

inside; that at said time the foreman instructed the said Edward Borchardt that he was not to enter said car without a respirator, and at that time furnished him with a new respirator which had been used for the first time on said date, and showed him how to use it; that pursuant to the request of the foreman, the said Edward Borchardt and his coemploye returned for work on said evening, dried out the three tank cars, and then proceeded to the painting; that the said Edward Borchardt first went into the car with a respirator and remained in a few minutes and came out, reporting to his coemploye that the respirator did not work properly; that a small disk or cap had been lost off of the respirator, which allowed said Edward Borchardt to breathe fumes from the paint; that the coemploye then went into the tank and worked from five to eight minutes without the respirator and came out; that the said Edward Borchardt then went into the tank without the respirator, and while in the tank painting without the respirator was overcome by the poisonous fumes and died in the tank; that on the night when he was injured, Edward and his coemploye were working alone, and that no foreman or superintendent was present to advise them or direct their work; that the defendant had actual knowledge of the death of said Edward immediately after it occurred; that appellee is a widow, and mother of said Edward, and owns no property; that she has two other children living with her, Edna, aged eighteen years, and William, aged sixteen years, both of whom were working and contributing to the support of the family; that at the time of his death said Edward Borchardt was twenty years old and was living with his mother, to whom he was contributing $15 a week.

The errors assigned are that the award of the full board is contrary to law, is not sustained by sufficient evidence, and is contrary to the evidence.

The appellant contends that the decedent met his death by reason of his wilful misconduct, in that he wilfully failed and refused to use a safety appliance provided for him to use in the performance of his duties, and that it was error to award any compensation under §8 of the Workmen's Compensation Act (Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1918), which provides that: "No compensation shall be allowed for an injury or death due to the employe's wilful misconduct, including intentional self-inflicted injury, intoxication and wilful failure or refusal to use a safety appliance * * *. The burden of proof shall be on the defendant employer."

In order to defeat appellee's claim for compensation, the burden is on appellant to establish affirmatively that it furnished a proper safety appliance, and that the decedent's failure to use such safety appliance amounted to wilfulness within the meaning of said §8.

Can this court, from the facts found by the Industrial Board, or from the evidence, say, as a matter of law, that the death of the decedent was brought about by reason of his wilful misconduct?

This court, in *Haskell, etc., Car Co.* v. *Kay* (1918), *ante* 545, 119 N. E. 811, said: "A mere failure to use the proper safety appliance, however, will not defeat a claim for compensation. To have such effect the failure must amount to wilfulness, or to a refusal within the meaning of this statute. Whether the conduct of a workman in any circumstance amounts to a wilful failure or to a refusal is a mixed question

586 APPELLATE COURT OF INDIANA,

General, etc., Tank Car Corp. *v.* Borchardt—69 Ind. App. 580.

of law and fact. It involves: First, the determining of the facts from the evidence, including legitimate inferences, which usually is the exclusive province of the board; and, second, the application of the law as represented by the statute above quoted to such facts. In this latter field the action of the board is reviewable by this court on appeal. *Inland Steel Co.* v. *Lambert* (1917), 66 Ind. App. 246, 118 N. E. 162. Since the board by its award has determined the issue of wilfulness in favor of appellee, this court in reviewing the action of the board must consider only the evidence that tends to support the award, and with such evidence only those permissible inferences in harmony therewith. * * * A mere failure to do a certain thing does not involve action or omission more serious in nature than negligence. To defeat appellee's claim it must appear that such failure was wilful, or that there was a refusal. In our judgment the word 'or' is used in the statute in an appositive sense, or merely as an alternative expression of the same idea; that it introduces the word 'refusal' merely in explanation of the phrase 'wilful failure,' and that the two expressions are practically equivalent in meaning."

In *Indianapolis Light, etc., Co.* v. *Fitzwater* (1918), (Ind. App.), 121 N. E. 126, this court said: " 'Wilful misconduct' means something different from and more than negligence, however great; it involves conduct of a *quasi* criminal nature, the intentional doing of something, either with the knowledge that it is likely to result in serious injury, or with a wanton and reckless disregard of its probable consequences."

The Supreme Court in construing the words "wilful failure" as used in the coal mining statute, said: "A wilful failure implies more than mere nonconformity, inattention, thoughtlessness or heedlessness, and goes to the *intent implied* in failing to do the thing * * * and implies an intentional and conscious violation and persistent refusal or neglect, not necessarily with evil or malicious intent; it amounts to more than mere passive negligence, it is active refusal, it is wilful or reckless disregard * * * and an intentional failure and refusal to perform a plain statutory duty." *Princeton Coal, etc., Co.* v. *Lawrence* (1911), 176 Ind. 469, 95 N. E. 423, 96 N. E. 387.

Wilful misconduct means a deliberate purpose not to discharge some duty necessary to safety. It implies obstinacy, stubbornness, design, set purpose, and conduct *quasi* criminal in nature. *Louisville, etc., R. Co.* v. *Bryan* (1886), 107 Ind. 51, 7 N. E. 807; *Brooks* v. *Pittsburgh, etc., R. Co.* (1902), 158 Ind. 62, 62 N. E. 694; *Southern R. Co.* v. *McNeeley* (1909), 44 Ind. App. 126, 88 N. E. 710, 714; *Great Western Power Co.* v. *Pillsbury* (1915), 170 Cal. 180, 149 Pac. 35.

Are the facts, as found by the board, and hereinbefore set out, when considered as an entirety, with all the irresistible inferences that may result therefrom, such that we can say, as a matter of law, that the death of Edward Borchardt was brought about by reason of his wilful misconduct? Do these facts imply anything more than mere nonconformity, inattention, thoughtlessness, or heedlessness, in failing to use the respirator? Do they show an active refusal, a wilful or reckless disregard,

an intentional failure or refusal to perform a duty, so as to come within the definition of wilful misconduct as given in the authorities heretofore cited?

It is clear to us that all these questions must be answered in the negative. The award is supported by the finding of the board, and also by the evidence, and is therefore not contrary to law.

A great many witnesses testified, but it is not necessary for us to set out the evidence in detail. It will be sufficient to review the evidence of but two of them.

Appellant's foreman, when asked what he said to decedent, testified that he asked decedent and another employe to come back at night and paint the inside of some tank cars; that they came back; that he got the decedent the respirator and showed it to him, and that the decedent tried it; that he told them that one of them should use the machine and one stay on top; that he was going home and they would have to look after themselves and take care of themselves; that he told the decedent they were not supposed to go in without the respirator; one man work with it and the other to stay on top and watch; that no instruction or permission was given them to work in the car without respirator; gave instructions to Edward Borchardt. "He worked for me quite a period, he obeyed orders and followed instructions pretty well."

The employe who was working with Edward Borchardt at the time of the accident said: That he did not know what instructions were given; only had one respirator there at the time; company had had more, but they were all burned up in a fire, and the one they were using the night of the accident was a new one. Edward Borchardt went inside of this tank car

first, and remained in eight or ten minutes. He had a protector on. He went back a second time, and came back and said the respirator would not work. Witness then went down without the respirator and stayed four or five minutes, and then came out. Edward Borchardt then went down and stayed eight or ten minutes and did not come out. That is when the accident happened. Edward did not make any expression that he would not use the respirator that night. "The only thing he said to me was, it would not work."

There is no evidence that the deceased ever refused to obey orders or to follow instructions. The fair and reasonable inference to be drawn from the finding of the board, as well as from the evidence, is that, if the respirator had not become out of order, he would have used it. He put it on and tried to use it, but for some unknown cause it was out of order and would not work. His failure to use the respirator was not because of wilfulness on his part, but because of the fact that it was out of order.

Appellant contends that the amount of the award is incorrect, and therefore contrary to law. The board finds that the deceased was employed at a weekly wage in excess of $24; that he and his brother and sister were each working and contributing to the support of the appellee, who was their widowed mother, and who owned no property; that the decedent at the time of his death was living at home with his mother, and contributing $15 a week to the appellee. The evidence disclosed that at the time of his death he was receiving about $5 a day. The board made the award on the theory that the average weekly wage of an employe, according to §40

of the Workmen's Compensation Act, cannot, for the purpose of computing compensation, be considered to be more than $24.

By §37 of the Workmen's Compensation Act, *supra,* it is provided: That, "if the employe leaves dependents only partially dependent upon his earnings for support at the time of the injury, the weekly compensation to those dependents shall, in addition to burial expenses, not to exceed one hundred dollars, be in the same proportion to the weekly compensation for persons wholly dependent as the amount contributed by the deceased employe to his partial dependent, bears to his annual earnings at the time of the injury."

The weekly compensation for persons wholly dependent, when the average weekly wage amounts to $24 per week or more, is $13.20. Appellee was a partial dependent, and was receiving $15 a week from the deceased, which is five-eighths of the maximum weekly wage of $24, as fixed by said §40. Under this section the annual earnings of the deceased was $1,248, instead of $1,560, as claimed by appellant. The amount of the award as fixed by the board is supported by the evidence, and is according to law.

The award of the Industrial Board is affirmed, with five per cent. increase, as provided by §3, Acts 1917 p. 154, §8020q2 *et seq.* Burns' Supp. 1918.

Affirmed.