INLAND STEEL COMPANY *v.* LAMBERT.

[No. 9,875.  Filed December 19, 1917.]

1.  MASTER AND SERVANT.—*Workmen's Compensation Act.—Statement of Facts.—Conclusions of Law.*—The determination of the Industrial Board that an accident did or did not arise out of, or in the course of, the employment is a legal conclusion and not the statement of an ultimate fact, such as contemplated by §59 of the Workmen's Compensation Act (Acts 1915 p. 392), providing that in each proceeding before it, the board shall make and file a statement of the facts. p. 250.

2.  MASTER AND SERVANT.—*Workmen's Compensation Act.—Statement of Facts.—Scope.*—As it is within the province of the Industrial Board to determine in the first instance whether an injury

involved in a proceeding before it was the result of an accident, and whether it arose out of and in the course of, the employment, it is proper for the board to include in its findings its general conclusions as to such questions in its statement of facts required by §59 of the Workmen's Compensation Act (Acts 1915 p. 392). p. 251.

3.  MASTER AND SERVANT.—*Workmen's Compensation Act.—Appeal. —Review.—Scope.*—Legal conclusions as to whether an accident arose out of, or in the course of, the employment, embodied by the Industrial Board in its finding required by §59 of the Workmen's Compensation Act (Acts 1915 p. 392), are reviewable on appeal, and are binding on the Appellate Court only when justified by the ultimate facts which must be included in the finding in order that such legal conclusions may be sustained.  p. 251.

4.  MASTER AND SERVANT.—*Workmen's Compensation Act.—Accident Arising in Course of Employment.*—Although when injured claimant had completed his hours of active service as a night watchman, and was proceeding to register out, as required by the employer, the injury was suffered in the course of the employment, the phrase "in the course of," as used in the Workmen's Compensation Act (Acts 1915 p. 392), having reference to the time, place and circumstances under which the accident occurs, as distinguished from the origin or cause of the accident, and relates to the circumstances under which an accident of a given character or quality takes place.  p. 251.

5.  MASTER AND SERVANT.—*Workmen's Compensation Act.—Accident Arising Out of Employment.—Burden of Proof.*—In a proceedings for compensation under the Workmen's Compensation Act (Acts 1915 p. 392), claimant has the burden of establishing the facts necessary to support a conclusion of law that the accident arose out of the employment.  p. 252.

6.  MASTER AND SERVANT.—*Workmen's Compensation Act.*—Where a night watchman, proceeding to the entrance of the plant to register out after he had completed his hours of actual service, attempted to board a switch engine going in that direction, for the purpose of avoiding an excavation in his path, and also to arrive at the entrance more quickly, and was injured, the accident did not arise out of the employment, but from a peril added by his conduct and from an act not reasonably incidental to his employment, but done purely for his own convenience.  p. 259.

7.  MASTER AND SERVANT.—*Workmen's Compensation Act.—Appeal from Award.—Reversal.—Mandate.*—As the Workmen's Compensation Act (Acts 1915 p. 392), does not specifically direct what shall be the mandate of the Appellate Court in case of reversal, the mandate should be regulated by the facts of the particular case.  p. 261.

From the Industrial Board of Indiana.

Proceedings under the Workmen's Compensation Act for compensation by Harold B. Lambert against the Inland Steel Company. From an award for applicant, the defendant appeals. *Reversed.*

*McAleer & Dorsey,* for appellant.

*George Miller* and *Bomberger, Peters & Morthland,* for appellee.

CALDWELL, J.—The following is the substance of that part of the board's finding material in determining the questions presented: On March 7, 1916, appellee was in the employment of appellant at an average weekly wage of $20.11, in the capacity of a switchman. As such he performed his duties in connection with the operation of a locomotive switch engine over tracks extending through yards connected with, and a part of, appellant's plant. His regular duties as a switchman kept him engaged from six o'clock p. m. until six o'clock a. m. of each day. By the terms of his employment he was required to deposit a card in a clock located at the entrance to appellant's plant both when he commenced work in the evening and also when he quit in the morning. The clock registered on the card the hours when he commenced and quit work, respectively. The distance from the point where he quit work in the morning to the point where the clock was located was equal to about five city blocks. A path led from the former point to the latter. On the morning of said day the path for a distance of about seventy feet between said points was impassable for pedestrians, by reason of an excavation about ten feet deep. On the morning of that day appellee, hav-

ing. completed his active duties as switchman, changed his work clothes for street clothes and started walking along said path to go to the clock to register out. Before he reached the place where the path was torn up as aforesaid, the engine upon which appellee had worked during the twelve hours preceding came along in charge of the day crew, running in the direction of the clock, whereupon appellee attempted to board it for the purpose of avoiding the excavation in the path, and for the purpose of arriving at the clock more quickly, and in so doing suffered an injury resulting in the loss of his left foot above the ankle joint. Appellee had been so engaged as a switchman for two months, during which time appellant had in force a rule printed in its rule book prohibiting any employes from riding on a switch engine except the employes engaged at the time in its operation. No representative of appellant had informed appellee of the existence of the rule. When he began work for appellant, two months prior to his injury, he was furnished a rule book printed in a foreign language, which he could not read. He returned the book to appellant's employment office, and advised the person in charge that the book was printed in a language which he could not read, and was thereupon informed that rule books printed in the English language were not at that time in stock. He was requested to return later that he might be furnished a rule book printed in English. Appellee was thereafter on several occasions in the employment office but made no request for such a book, and none was furnished him. At no time prior to his injury had appellee boarded a switch engine after discontinuing his active duties, for the purpose of riding to the clock to register out, but on several

occasions he had ridden on the engine from a point near the clock to the point where he changed his street clothes for work clothes and began his active duties for the night.

The board finds also as facts that appellee received his injuries ''by an accident arising out of and in the course of the employment,'' and that his injury was not due to his own wilful misconduct.

On the finding the board awarded appellee compensation for 125 weeks at the rate of $11.06 per week under the provisions of subdivision (e) of §31 of the Workmen's Compensation Act. Acts 1915 p. 392.

Section 59 of the act provides that in each proceeding before it, the board shall make and file a statement of the facts. We are first required to

1. determine whether under the finding it appears that appellee received his injury ''by an accident arising out of and in the course of the employment.'' It will be observed that the statement of facts includes a finding that such was the origin of the injury. However, a statement of facts should consist of ultimate facts, and should not include either evidentiary facts or conclusions of law. To determine that a certain injury was the result of an accident, or that it arose out of or in the course of the employment, or that it was or was not due to the wilful misconduct of the person involved, as those terms are used in the act, requires that certain fixed legal principles be applied to the ultimate facts of the particular case. It follows that such an inquiry involves a law question, and therefore that the result of such inquiry, as that the accident did or did not arise out of, or in the course of, the employment, or whether it was due to wilful misconduct, is

a legal conclusion rather than an ultimate fact. *Lagler* v. *Roch* (1914), 57 Ind. App. 79, 104 N. E. 111; *In re Mathewson* (1917), (Mass.) 116 N. E. 831; *Dietzen Co.* v. *Industrial Board* (1917), 279 Ill. 11, 116 N. E. 684.

However, since it is within the province of the board to determine in the first instance whether an injury involved in the proceeding before it was the result of an accident, and whether it arose out of, and in the course of, the employment, it is proper for the board to include in its finding its general conclusions respecting such matters.

Such conclusions, however, are reviewable by this court, and when so reviewed they are binding on this court only when justified by the ultimate facts which must be included in the finding in order that such legal conclusions may be sustained. It follows that we cannot consider such conclusions of law in determining whether under the ultimate facts the injury here was the result of an accident, and whether it arose out of, and in the course of, the employment as those terms are used in the act.

It is not contended that the injury here was not the result of an accident as that term is used in the act. We shall therefore give that element no further consideration. It appears from the finding that at the time when appellee was injured, although he had completed his hours of active service as a switchman for that night, yet he was proceeding to the discharge of a further duty of his employment required of him by his employer; that is, he was proceeding to register out. We therefore conclude that the injury was suffered in the course of the employment. The phrase "in the course of,"

as used in our act and similar acts, has reference to the time, place, and circumstances under which the accident takes place, as distinguished from the origin or cause of the accident. Such phrase relates to the circumstances under which an accident of a given character or quality takes place. *Fitzgerald* v. *Clarke & Son* (1908), 1 B. W. C. C. 197; *Dietzen Co.* v. *Industrial Board, supra.*

The following facts bear more particularly on the question whether the accident arose out of the employment: The path being obstructed as indicated, appellee attempted to board the engine before he had reached such obstruction, and as a result he was injured. In attempting to board the engine two purposes or motives actuated him: First, he desired to avoid the obstruction, and, second, that he might reach the clock and register out more quickly. In attempting to board the engine he was violating appellant's rules, but appellant had not advised him that there was such a rule, and a book containing such rule printed in a language which he could read had not been furnished him. Appellee had at no time theretofore attempted to board a switch engine after he had completed his active duties for the day that he might ride to the point of the clock to register out, but he had ridden in the other direction as indicated.

The burden was on appellee to establish the facts necessary to support a conclusion that the accident arose out of the employment, and hence there are certain facts not found that should be considered also: Thus, it is not found that there was not a path around the excavation, or that there was not some other route to the clock, or that appellee did not know of the existence of the rule from some other source than appellant, or that there was any

custom for the employes to ride the engine as appellee attempted to do, or what knowledge appellant had on the subject, or that the engine was in motion on the other occasions when appellee boarded it and rode in the opposite direction, or what was the speed of the engine when appellee attempted to mount it on the occasion involved here. It would seem that in the process of attempting to classify appellee's conduct here as being reasonably incident to his employment the weight of such unfound facts should count against him.

We proceed to the question of whether it appears here that the injury arose out of the employment. The language "injury by accident arising out of, and in the course of the employment," as found in our act, is taken literally, but perhaps remotely from the English Workmen's Compensation Act of 1897, that act containing a provision to the effect that the employer shall be held liable in cases otherwise coming within the act where "personal injury by accident arising out of, and in the course of the employment is caused to a workman." L. R. Stat. 60-61, Vict. p. 53. The same language is found also in the English act of 1906. 6 Edw. VII, ch. 58; 2 Honnold, Workmen's Compensation 1686.

" 'It is common learning, that the adjudged construction of the terms of a statute is enacted, as well as the terms themselves, when an act, which has been passed by the legislature of one state or country, is afterwards passed by the legislature of another * * * for if it were intended to exclude any known construction of a previous statute, the legal presumption is that its terms would be so changed as to effect that intention.' " *Jarvis* v. *Hitch* (1903),

161 Ind. 217, 67 N. E. 1057; *Commonwealth* v. *Hartnett* (1855), 3 Gray (Mass.) 450. In harmony with such rule it is held that, in construing any language contained in a state Workmen's Compensation Act, the construction placed on such language as contained in the English act by the courts of that jurisdiction prior to the enactment of the former is very persuasive. *Jarvis* v. *Hitch, supra; Ocean Accident, etc., Co.* v. *Industrial Accident Comm.* (1916), 173 Cal. 313, 159 Pac. 1041, L. R. A. 1917B 336; *Powers* v. *Hotel Bond Co.* (1915), 89 Conn. 143, 93 Atl. 245; 1 Honnold, Workmen's Compensation p. 29.

We therefore proceed to an examination of some of the English decisions. *Plumb* v. *Cobden Flour Mills Co.*, 6 B. W. C. C. 245, decided by the Court of Appeals of England in 1913, involved an injury suffered by a workman while stacking bundles of sacks in the mill of his employer. On one occasion when the pile of sacks had reached a height rendering it inconvenient to pitch the bundles up, the workman and those assisting him fastened a rope to the bundles and extended it around a shafting that revolved near the ceiling, and not intended for such use, and thus proceeded to lift the bundles. The work went well for a while, but eventually a bundle got fast in the shafting, and the workman as a consequence became entangled in the rope and thus was injured. The court held that as the workman undertook to do his work in a perilous and unreasonable way, there being no emergency requiring him to do so, the accident did not arise out of the employment. The Plumb case having been appealed to the House of Lords, was examined by that body sitting as a court. 7 B. W. C. C. 1. In the opinion, Viscount Haldane discusses the subject of tests that may be applied in

determining whether the particular accident arose out of the employment, and develops that that test must be selected which fits the circumstances of the particular case. He suggests as a test applicable there, as well as here, the following: "Was the risk one reasonably incidental to the employment?" More specifically he quotes as applicable the following from *Barnes* v. *Nunnery Colliery Co.* (1911), 5 B. W. C. C. 195: "The unfortunate deceased lost his life from the new and added peril to which by his own conduct he exposed himself, not to any peril which his contract of service, directly or indirectly, involved or at all obliged him to encounter. It was not, therefore, reasonably incidental to his employ. That is the crucible test."

In the Barnes case a boy, employed to attach corves (a sort of basket or tub) to an endless rope used in lifting coal from a mine, attempted to ride into the mine in one of the tubs, and was killed. There was a rule against such practice, but it was habitually ignored. That case was before both the Court of Appeals and the House of Lords, the decision by each court being that the accident did not arise out of the employment. In the decision by the Court of Appeals, as reported in 4 B. W. C. C. 43, Cozens-Hardy, M. R., in his opinion quotes from *Brice* v. *Lloyd*, 2 B. W. C. C. 26 as follows: " 'But where, as here, a man chooses to go to a dangerous place where he has no business to go, incurring a danger of his own choosing and one altogether outside any reasonable exercise of his employment, in my opinion, if he meets with an accident, it cannot be said that the accident arose out of his employment.' " The decision by the House of Lords is reported in 5 B. W. C. C. 195, *supra.* In the opinion in that case

Lord Atkinson distinguishes between the negligent doing of a thing which a workman is employed to do, and the doing of a thing not reasonably incident to the employment, and says in substance that a peril which arises from the negligent manner in which an employe does his work in most cases should be held to be a risk incidental to the employment, but respecting the other class of cases he says by way of illustration: "For example, if a master employs a servant to carry his (the master's) letters on foot across the fields on a beaten path, or on foot by road to a neighboring post office, and the servant, having got the letters, went to the stables, mounted his master's horse, and proceeded to ride across country to the post office, was thrown and killed; or went to his master's garage, took out his motor car and proceeded to drive by road to the post office, came into collision with something and was killed, it could not be held, I think, according to reason or law, that the injury to the servant arose out of his employment, although, in one sense, he was about to do ultimately the thing he was employed to do, namely, to bring his master's letters to the post."

In the Brice case, *supra,* workmen were accustomed to eat their dinners on the premises and a dining room was provided for that purpose. The workmen, however, were not required to eat their dinners in the dining room, but were at liberty to do so anywhere on the premises. Brice climbed on top of some vats filled with hot water that he might eat his dinner there. In attempting to return he fell through an opening in the vat and was scalded. The Court of Appeals held that the accident did not arise out of the employment. In the course of his opinion Cozens-Hardy, M. R., said: "This workman was

not bound to get his meals in the dining room. But it is quite another proposition to say that though he was not bound to get his meals in the dining room he was entitled to get them, as it was put in the course of the argument, on the top of the roof and to climb up there by a ladder, or in cold weather on the top of a hot-water tank, getting there by means which imposed considerable risk on the excursionist." And in the course of his opinion, Farwell, L. J., in commenting on the conduct of Brice, says: "But the employment does not extend to the doing of things which are unreasonable."

In *Pritchard* v. *Torkington* (1914), 7 B. W. C. C. 719, where a workman crossed a railroad track in front of a train in place of over a bridge provided for that purpose, it was held that the workman had exposed himself to added risk, not reasonably incidental to the employment, and that the accident did not arise out of the employment.

In *M'Daid* v. *Steel,* decided by the Court of Session of Scotland (1911), 4 B. W. C. C. 412, where a boy was employed to deliver fish to a kitchen situated on the third floor, and where he went by way of an automatic hoist in place of the stairways, there is a like holding.

In *Hendry* v. *United Collieries* (1910), 3 B. W. C. C. 567, decided by the same court, where a man on leaving his work, instead of going by the usual route, proceeded along a perilous path and as a consequence was injured, there was a like holding, the court citing as controlling *Morrison* v. *Clyde, etc., Trustees* (1908), 46 Scot. L. R. 40, where a workman on leaving the plant for the purpose of going to dinner attempted to get on a wagon moving in the same

direction, and as a consequence was thrown under the wagon and injured.

In *M'Laren* v. *Caledonian R. Co.* (1911), 48 Scot. L. R. 885, 5 B. W. C. C. 492, a canal overseer employed by a railroad company was returning to his office after transacting some business for the company. He took a short cut along the line, in place of going by the proper route, and was run over and killed by a train. In holding that the accident arose in the course of, but not out of, the employment, the Court of Sessions, by its Lord President, suggested a test possibly not applicable under all circumstances, using the following language: "Now, whenever you are about your master's business, the question of whether an accident which comes about arises out of your employment or not may be tested—I would not say decided—but it may be tested by putting the question: Was the accident which happened one of the ordinary risks which a person in that employment is subjected to?" and, also, "Has the servant by this action increased the risks of his employment?" *Wemyss Coal Co.* v. *Symon* (1912), 6 B. W. C. C. 298; *Revie* v. *Cumming* (1911), 5 B. W. C. C. 483, 48 Scot. L. R. 831; *Spooner* v. *Detroit Saturday Night Co.* (1915), 187 Mich. 125, 153 N. W. 657, L. R. A. 1916A 17, 9 N. C. C. A. 647, and note; *Schelf* v. *Kishpaugh* (1914), 37 N. J. L. J. 173; *Hewitt's Case* (1916), 225 Mass. 1, 113 N. E. 572, L. R. A. 1917B 249; *Cavanagh* v. *Tyson, etc., Co.* (1917), 227 Mass. 437, 116 N. E. 818; *Dube's Case* (1917), 226 Mass. 595, 116 N. E. 234; *Northern Illinois, etc., Traction Co.* v. *Industrial Board* (1917), 279 Ill. 565, 117 N. E. 95.

We recognize that the facts in many of these cases are not entirely similar to the facts in the case at

bar, there being in certain of them elements additional to those involved here. The courts in compensation cases have frequently recognized the difficulty of determining in any particular case whether an injury is suffered by an accident arising out of the employment, by applying the standard of some other case, and as a consequence have frequently said that each case must be determined from a consideration of its own facts. In the case at bar we are impressed that the accident arose from a peril added by the conduct of the appellee; that the act of attempting to get on the engine in motion while proceeding to the time clock was not reasonably incidental to his employment, but rather was an act done purely for his own convenience. It cannot be said that the attempt to mount the locomotive was in the interest of the employer, or for the purpose of expediting the employer's work, since the employer was not interested in the speedy checking out of appellee, but interested only in the checking out being accomplished. In our judgment the facts do not present a situation wherein the employe negligently performed a duty, or was guilty of negligence in the performance of a duty, but rather a case wherein he attempted unnecessarily to do a perilous act, not reasonably incident to his employment. We therefore conclude, under the finding, that the accident did not arise out of the employment. Had appellee, while proceeding along the path towards the clock, merely been guilty of some negligent act or omission, or had he, by reason of the obstruction, undertaken to traverse or cross the railroad, and thus been run against by the locomotive, or had he been actually engaged in connection with the operation of the locomotive, and required to get on and off of it in the course of the

employment, and attempted to do so in a negligent manner, perhaps we should arrive at a different conclusion. For illustrative cases, see *Robertson* v. *Allan Brothers & Co.* (1908), 1 B. W. C. C. 172; *W R. Rideout Co.* v. *Pillsbury* (1916), 173 Cal. 132, 159 Pac. 435; *Beaudry* v. *Watkins* (1916), 191 Mich. 445, 158 N. W. 16, L. R. A. 1916F 576; *Keenan* v. *Flemington Coal Co.* (1902), 40 Scot. L. R. 144, 4 N. C. C. A. 122; *Brown v. City of Decatur* (1914), 188 Ill. App. 147; *Rayner* v. *Sligh Furniture Co.* (1914), 180 Mich. 168, 146 N. W. 665, L. R. A. 1916A 22, Ann. Cas. 1916A 386; *Kimbol* v. *Industrial Accident Comm.* (1916), 173 Cal. 351, 160 Pac. 150, L. R. A. 1917B 595.

The sufficiency of the evidence is also challenged. The evidence in the main is in harmony with the finding. There was evidence tending to establish, however, the following facts, not included in the finding: The locomotive was moving backwards at the rate of about ten miles per hour, drawing a train of cars, and appellee, holding his dinner bucket in his hand, in attempting to get on the engine between it and the first car, slipped, and was thrown under the car. There were other paths leading to the clock from the point where appellee changed his clothing besides the obstructed one. The locomotive was an ordinary switching engine with a step in front designed for the crew to ride on. The evidence did not disclose whether it was customary for the crew to get on this step while the engine was moving.

It is our judgment, also, from a consideration of the evidence, that the accident arose in the course of the employment, but that it did not arise out of the employment. Our conclusion necessitates a reversal.

Our Workmen's Compensation Act does not specifically direct what shall be the mandate of this

court in case of reversal. It is our judgment, however, that the mandate should be regulated by the facts of the particular case. In the case at bar it appears to us that the ends of justice will more nearly be met by directing a rehearing before the board, if appellee desires such rehearing.

The award is reversed, with orders as indicated.

NOTE.—Reported in 118 N. E. 162. Workmen's compensation: accidents deemed to arise out of and in the course of the employment, L. R. A. 1916A 40, 232, L. R. A. 1917D 114, Ann. Cas. 1913C 4, 1914B 498, 1916B 1293, 1918B 768.