NORDYKE AND MARMON COMPANY ET AL. v. SWIFT ET AL.

[No. 10,491.    Filed May 27, 1919.    Rehearing denied
October 16, 1919.]

1. EVIDENCE.—*Resolutions.—Scope.*—The scope of a resolution
cannot be enlarged beyond what reasonably appears from its
context, even by a member of the adopting body.  p. 180.

2. MASTER AND SERVANT.—*Workmen's Compensation Act.—Dis-
obedience of Orders by Workman.—Acquiescence.—Effect.*—
Where an employer acquiesced in the violation of an order
as to the means to be used by employes in doing certain work,
the order was thereby nullified.  p. 181.

3. MASTER AND SERVANT.—*Workmen's Compensation Act.—Find-
ings by Industrial Board.—Inferences.*—In proceedings under the
Workmen's Compensation Act, Acts 1915 p. 392, §80201 et seq.
Burns' Supp. 1918, the Industrial Board, in determining what
its finding should be is authorized to draw reasonable infer-
ences from the facts established and the circumstances shown by
the evidence.  p. 181.

4. MASTER AND SERVANT.—*Workmen's Compensation Act.—"Acci-
dent Arising Out of and in Course of Employment."—Construc-
tion.*—The words, "by accident arising out of and in the course
of the employment," as used in the Workmen's Compensation
Act, Acts 1915 p. 392, §80201 et seq. Burns' Supp. 1918, should
be given a broad and liberal construction to effectuate the hu-
mane purposes of the act.  p. 182.

5. MASTER AND SERVANT.—*Workmen's Compensation Act.—Acci-
dent Arising Out of and in Course of Employment.—Deviation
from Custom.—Presumption.*—Where a janitor was killed by a
charged wire while preparing to procure gasoline with which
to clean floors, the accident resulting in death arose out of and
in the course of the employment within the Workmen's Com-
pensation Act, Acts 1915 p. 392, §80201 et seq. Burns' Supp. 1918,
even though he was deviating from the usual custom by arrang-
ing to use clean gasoline instead of dirty gasoline, it being pre-
sumed, in the absence of a finding to the contrary, that deceased
was exercising a reasonable discretion in the discharge of his
duties under the circumstances.  p. 183.

6. MASTER AND SERVANT.—*Workmen's Compensation Act.—Scope.—
Construction.*—The Workmen's Compensation Act, Acts 1915
p. 392, §80201 et seq. Burns' Supp. 1918, does not limit com-
pensation to cases where an injury is received by an employe

while he is performing his work in the usual and customary manner or in the way he was directed and an employe who, in an honest attempt to discharge a duty assigned him, does an act incidental thereto not specifically directed, or departs from the usual methods of performing his work, does not thereby necessarily deprive himself, or his dependents, of a right to compensation, if injured while so engaged. p. 184.

7. MASTER AND SERVANT.—*Workmen's Compensation Act.—Accident Arising in the Course of Employment.*—An employe may be said to receive an injury by accident arising in the course of his employment, within the meaning of the Workmen's Compensation Act, Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1918, when it occurs within the period of the employment, at a place where he may reasonably be, and while he is doing something reasonably connected with the discharge of the duties of his employment. p. 185.

8. MASTER AND SERVANT.—*Workmen's Compensation Act.—Accident Arising in Course of Employment.—Duties Within Employment.*—Where a janitor, who customarily used dirty gasoline to clean factory floors, was electrocuted while preparing to obtain clean gasoline for that purpose, the act of procuring clean gasoline, even if it had never previously been used to clean the floors, was the performance of an act reasonably connected with the janitor's work, and this would be true although decedent, in attempting to procure clean gasoline, was disobeying an order theretofore given him, such disobedience bearing not on the question whether decedent's injury was received by accident arising out of and in the course of his employment, but only on the question of wilful misconduct. p. 185.

From the Industrial Board of Indiana.

Proceedings for compensation under the Workmen's Compensation Act by Grace E. Swift and others against the Nordyke and Marmon Company and another. From an award for applicant, the defendants appeal. *Affirmed.*

*Joseph W. Hutchinson,* for appellants.
*White & Jones,* for appellees.

BATMAN, C. J.—The record in this case discloses that appellees are the widow and children of one

George E. Swift, deceased, who met his death while in the employ of appellant Nordyke and Marmon Company. Appellees, on September 28, 1918, filed with the Industrial Board of Indiana an application for the adjustment of their claim for compensation. Appellants appeared thereto and joined issues thereon. After a hearing and an award by a single member of the board, and a review thereof by the full board, a finding was made, which contained, among others, the following facts: That on September 5, 1918, George E. Swift was in the employ of appellant company as a janitor foreman; that for several months prior to said date there were thirty-five or forty employes of said company in the janitor force, who worked under the said George E. Swift, and were subject to his orders; that for the purpose of cleaning the floors, and especially the aisles in the buildings of said company, the force of janitors had been in the habit of using dirty gasoline, that is, gasoline that had been used for the purpose of cleaning machines; that on said date, while the said George E. Swift was preparing to procure clean gasoline with which to clean the floors in the buildings of said company by drawing the same from a tank containing 30,000 gallons, he took hold of an electric wire for the purpose of attaching it to a bucket with which to draw gasoline from said tank; that he accidentally took hold of a socket attached to said wire, thereby receiving an electric shock, which caused his death on said date; that about the middle of July, 1918, some officer of the United States Government had called the attention of the company to the fact that it was desirable to conserve the supply of gasoline, and requested that its use be discontinued for all

unnecessary purposes; that soon thereafter an organization in the plant of said company, known as the ''fire board,'' passed a resolution requesting a discontinuance of the promiscuous use of gasoline, and issued a written order to that effect, but the evidence does not show that the written order was ever called to the attention of said George E. Swift; that the order was made for the purpose of conserving the supply of gasoline, and not as a safety measure; that the janitor force did not discontinue the use of gasoline for the purpose of cleaning the floors after the passage of said resolution by the fire board until after the death of said George E. Swift, but the evidence does not show whether clean gasoline had ever been used by said George E. Swift and the janitors working under him on any previous occasion. There is also a finding: ''That his (Swift's) attention was verbally called to the fact of the request of the federal government by at least two representatives of the defendant company, and one representative of the defendant company had suggested to him on one occasion that the use of gasoline for the purpose of cleaning the floors should be discontinued * * * that the evidence does not show that the defendant company ever took any steps to require the discontinuance of its use for that purpose.'' On the facts found the full board made an award in favor of appellees, from which this appeal is prosecuted.

Appellants contend that the evidence is not sufficient to sustain that part of the finding quoted above. In support of this contention they cite the adoption of the resolution by the fire board, and the statements made to the decedent with reference thereto, by two other members of appellant company, O'Hara and

Hardwick, whereby it is claimed that the decedent was directed to discontinue the use of gasoline in cleaning floors, instead of being given a mere suggestion in that regard. The evidence with reference to the adoption of the resolution by the fire board tends to show that it merely provided that the promiscuous use of gasoline should not continue; that it was adopted for the purpose of conserving gasoline in pursuance of a suggestion from the United States government, and not as a safety measure. There is no evidence that the use of gasoline for cleaning floors was mentioned therein, or that it was intended thereby to prohibit its use for such purpose. In fact, it would be reasonable to infer the contrary, in view of the fact that the gasoline used for such purpose was gasoline which had been previously used in cleaning machines and had thereby become dirty. Under these circumstances it is not reasonable to presume that the conservation of such gasoline was covered either by the suggestion of the government or the resolution of the fire board adopted in pursuance thereof. It appears from the evidence that, after the adoption of said resolution, the employes named above made certain statements to the decedent with reference thereto, and to the use of gasoline for cleaning floors. Any statement made by said O'Hara may be disregarded in this connection, as the uncontradicted evidence shows that he had no control over the decedent, or his work in cleaning the floors and that the decedent was in no way bound by what he may have said about the use of gasoline for that purpose. As to the employe Hardwick the evidence shows that he was a member of the fire board, but this fact is not significant, as it is apparent that the scope of a resolution cannot be en-

larged beyond what reasonably appears from its context, even by a member of the adopting body. The evidence tends to show that this witness had only a divided supervision over the decedent, but whether his supervision included the work of cleaning floors does not appear. However, the Industrial Board may have believed, as the evidence tends to prove, that in what he said to the decedent about the use of gasoline he was only attempting to communicate to him the contents of the resolution adopted by the fire board, and did not intend thereby to give him an independent order with reference to the use of gasoline. But even if it could be said that he 2. had authority over the decedent, with respect to the use of gasoline in cleaning the floors, and that his statements to him with reference thereto should be construed as an order in that regard, there is evidence of facts from which it may be reasonably inferred that appellant company knew that it was not being obeyed, and had acquiesced in its violation, which, under the law, would have the effect of nullifying the same. In determining what its finding should be, the Industrial Board had all the evidence before it, and was authorized to draw 3. reasonable inferences from the facts established and the circumstances shown thereby. *Haskell, etc., Car Co.* v. *Brown* (1918), 67 Ind. App. 178, 117 N. E. 555. It reached the conclusion stated above on the question under consideration, and on the facts and circumstances shown by the evidence we cannot say there was error in so doing.

Appellants also contend that the finding of facts is not sufficient to sustain the award. They base this contention chiefly on the fact that the special finding

shows that prior to the time the decedent was injured, it has been the custom to use dirty gasoline in cleaning the floors; that on the occasion in question the decedent was preparing to draw clean gasoline from a large tank for that purpose; that in making said preparation he secured an electric wire, which he intended to attach to a bucket for the purpose of drawing the gasoline from the tank; that the wire was charged, and he accidentally took hold of the socket, whereby he received an electric shock which caused his death. They insist that these facts, when taken in connection with the further finding that the evidence does not show whether or not the decedent, and the janitors working under him, had ever used clean gasoline on any previous occasion, disclose that the accident which caused the decedent's injuries did not arise out of and in the course of his employment, and hence the appellees are not entitled to an award.

This court is committed to the doctrine that 4.   the words "by accident arising out of and in the course of the employment," as used in the Workmen's Compensation Act of this state, Acts 1915 p. 392, §80201 et seq. Burns' Supp. 1918, should be given a broad and liberal construction in order that the humane purpose for which it was enacted may be realized. *Holland, etc., Sugar Co.* v. *Shraluka* (1917), 64 Ind. App. 545, 116 N. E. 330; *United Paperboard Co.* v. *Lewis* (1917), 65 Ind. App. 356, 117 N. E. 276. It has been said that, in order for an accident to arise out of and in course of the employment, it must result from a risk reasonably incident thereto; that the words "out of" refer to the cause of the accident, while the words "in the course of," to the time, place and circumstances under which the accident

takes place; that the former words are descriptive of the character or quality of the accident, while the latter words relate to the circumstances under which an accident of that character or quality takes place. A quotation containing this statement, in substance, was cited with approval in the case of *Haskell, etc., Car Co.* v. *Brown, supra.* The difficulty, however, does not arise so much from a determination of a proper definition of the clause under consideration, as it does from an application of the same to a given state of facts. In this connection it has been frequently said that each case must be determined from a consideration of its own facts and circumstances. *Inland Steel Co.* v. *Lambert* (1917), 66 Ind. App. 246, 118 N. E. 162.

Directing our attention to the facts disclosed by the finding in the instant case, it is obvious that, if the decedent had received his injuries while preparing to obtain dirty gasoline for use in cleaning the floors, in accordance with the custom in that regard, they would have been received by accident arising out of and in the course of his employment. The question now arises whether it must be held otherwise, because the finding shows that he was preparing to obtain clean gasoline for such purpose, and also shows that there was no evidence as to whether he, and the janitors working under him, had ever used clean gasoline on previous occasions. The Industrial Board has held in effect that this question must be answered in the negative, and in our opinion it reached the right conclusion. It is apparent that the decedent was preparing to procure clean gasoline for the purpose of performing work in the scope of his employment. True, it ap-

pears that he was deviating from the usual custom in that regard, by arranging to use clean instead of dirty gasoline, but that is not sufficient to force a conclusion that the accident resulting in his death did not arise out of and in the course of his employment, as it will be presumed, in the absence of a finding to the contrary, that a servant may use some discretion in the performance of the work assigned him. Indeed, the services of an employe, who must be directed as to the details of his work under all the varying circumstances that may arise, as a rule, would be undesirable, and in many instances of little value. Under the facts found in the instant case it should not be assumed that the decedent, in attempting to procure clean gasoline to carry on his work, did a wrongful act, or turned aside from his employment so as to place himself and his dependents outside of the protection of the law, but rather that he was exercising a reasonable discretion in the discharge of his duties under the existing circumstances. *Elk Grove Dist.* v. *Industrial Acc. Comm.* (1917), 34 Cal. App. 589, 168 Pac. 392. In this connection it should be observed that the Workmen's Compensation

6. Act of this state, *supra,* does not limit compensation to cases where an injury is received by an employe while he is performing his work in the usual and customary manner or in the way directed. It is a fair inference that, if the legislature had intended to so limit the right to compensation, appropriate language would have been used to indicate such fact. We are therefore justified in refusing to give it such a narrow construction, and in holding that an employe, who in an honest attempt to discharge a duty assigned him, does an act incidental

thereto not specifically directed, or departs from the usual methods of performing his work, does not thereby necessarily deprive himself, or his dependents, of a right to compensation, if injured while so engaged. *State, ex rel.* v. *District Court, etc.* (1915), 129 Minn. 176, 151 N. W. 912.

An employe may be said to receive an injury by accident arising in the course of his employment within the meaning of the Workmen's Compensation Act of this state, *supra,* when it occurs within the period of employment, at a place where the employe may reasonably be, and while he is doing something reasonably connected with the discharge of the duties of his employment. *In re Ayers* (1918), 66 Ind. App. 458, 118 N. E. 386; *Granite Sand, etc., Co.* v. *Willoughby* (1919), 70 Ind. App. 112, 123 N. E. 194; *Fairbank Co.* v. *Industrial Comm.* (1918), 285 Ill. 11, 120 N. E. 457. It will be observed that under this rule it is not necessary that an employe, in order to receive compensation if injured, shall be performing his duties in obedience to some direction, or in accordance with some general rule or custom. It suffices if he be doing something reasonably connected therewith. Under this rule and the facts found, the procurement of clean gasoline with which to clean the floors, even if it had never been used for that purpose before, was clearly the performance of an act reasonably connected with such work. This would be true even if the facts disclosed, as appellants contend the evidence shows, that the decedent, in attempting to procure clean gasoline for such purpose, was disobeying an order theretofore given him in that regard, as the fact of such disobedience would bear on the question

of wilful misconduct rather than on the question under consideration. *Nat. Car Coupler Co.* v. *Marr* (1919), 69 Ind. App. 206, 121 N. E. 545.

Under the facts found, there are no sufficient grounds on which to base a conclusion that the decedent's injury and death were due to wilful misconduct. For the reasons stated, we conclude that the finding of facts is sufficient to sustain the award.

Finding no error in the record, the award is affirmed, and, by virtue of the statute, the amount thereof is increased five per cent.