## HUFFORD v. LIVINGSTON.

[No. 11,489.   Filed December 8, 1922.   Rehearing denied April 6, 1923.]

1. MASTER AND SERVANT.—*Workmen's Compensation Act.*—*Findings.*—*Injury Arising Out of and in the Course of Employment.*—*Evidence.*—In a proceeding for compensation under the Workmen's Compensation Act (Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1921), evidence *held* to warrant the Industrial Board in finding that the injury to applicant, sustained while oiling a moving traction engine, arose out of and in the course of his employment. p. 523.

2. MASTER AND SERVANT.— *Workmen's Compensation Act.— Questions of Fact.—Injury Arising Out of and in Course of Employment.*—The question whether an injury arises out of and in the course of the employment within the Workmen's Compensation Act (Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1921) is one of fact, and not of law. p. 524.

3. MASTER AND SERVANT.— *Workmen's Compensation Act.— Questions for Industrial Board.— Compensable Injuries.—* Whether at the time of an accident injuring an employe he was doing something not within the scope of his employment is a question primarily for the Industrial Board. p. 525.

4. MASTER AND SERVANT.—*Workmen's Compensation Act.—Finding of Compensable Injury.—Negligence.*—The fact that a mechanic, injured while oiling a moving traction engine, was negligent in the method used in applying the oil, would not inhibit the finding that the injury arose out of and in the course of the employment. p. 525.

5. MASTER AND SERVANT.—*Workmen's Compensation Act.—Willful Misconduct.—Failure to Find.*—Where, in a proceeding for compensation under the Workmen's Compensation Act (Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1921), the employer filed a special answer averring facts claimed to show that the injured workman was doing his work in such a perilous and unreasonable way as to be guilty of wilful misconduct, the absence of any finding by the Industrial Board on that issue is equivalent to a finding thereon against the employer. p. 527.

From the Industrial Board of Indiana.

Proceedings for compensation under the Workmen's Compensation Act by Dale Livingston against John Hufford. From an award for applicant, the defendant appeals. *Affirmed.*

*Murat W. Hopkins, George W. Julien* and *L. D. Boyd,* for appellants.

*Ryan, Ruckelshaus & Ryan,* for appellee.

The Industrial Board awarded compensation to the appellee, Livingston, and against the appellant, Hufford. The finding of facts made by the Board includes the following:

"That Dale Livingston was employed by John Hufford at an average weekly wage of $23; that on May

17, 1921, he (Livingston) received a personal injury by accident arising out of and in the course of his employment, of which defendant had knowledge * * *; that as a result of said injury he lost four fingers, and the heads of the meta-carpal bones, of the right hand;"

The contentions in support of the assignment of error are:   (1) that the finding that the injury by accident "arose out of and in the course of the employment" is not sustained by sufficient evidence; and (2) that the workman was guilty of wilful misconduct.

The evidence, which is practically free from conflict— the slight deviations therein being of little consequence —discloses the following state of evidential facts:

John Hufford owned and operated a machine shop. He was engaged in repairing and rebuilding threshing machines and traction engines, and had several men working for him.   Livingston was employed as a mechanic.   He helped to repair and rebuild threshing machines and engines, and moved threshing machines and engines on the road to and from the shop.   About May 15, 1921, Hufford directed Livingston to do some work on a traction engine.   That particular engine was located about twenty miles from the machine shop. The engine had been standing out in the woods for about six years.   There was no covering over it and during that time it had been exposed to the elements.   Someone had taken off all the brasses, boxes and pipes; and those things were to be replaced.   The engine was thoroughly rusted.   John Hufford and Jesse Hufford worked with Livingston on the engine.   They put in pipes, coupled the pipes together, put in flues, put in an oil tank, put on a smoke stack, and did whatever was to be done. After two days' work on the engine, Livingston's employer directed him to take the necessary tools and things and bring the engine into the shop.   Livingston went in a Ford truck to the place where the engine was

located, and Ivan Foster went with him.   Mr. Hufford was there when Livingston arrived, and John Foster, another employe, was there also.   After the engine had been steamed up, John Foster got on the engine and turned on the steam to see if it would run.   He put in the clutch to see if it would move.   After seeing that the engine would run, he moved it somewhat.   Mr. Hufford oiled the engine, and Livingston oiled it on top. The idler was also oiled.   Livingston then drove the machine through the woods, a distance of about 40 rods, and out onto the road.   When the men discovered that the engine would run, Mr. Hufford said, "Come on boys, let's load up and all go out together."   Ivan Foster was a boy about 13 years of age, and the son of John Foster. Mr. Hufford told Ivan to open the gate, and he did open and close the gate.   After closing the gate he got on the platform of the traction engine and sat down on the box.   Livingston drove the engine on the road for a distance of about 60 rods.   Then he got off the engine, oiled the governor and the wheel heads, and then walked around and oiled the bull pinion.   He then began to oil the compensation gear and the idler.   The compensation gear had cogs, a mesh of about an inch and a half. He was using soft oil.   While he was engaged in oiling the gears, the engine was moving at the rate of about two miles per hour.   He was walking backward or sidewise at the side of the moving engine.   In order to pour oil on the gears, he had to hold the oil can in his right hand; and while thus engaged, the boy on the engine attracted his attention.   He noticed that the boy was attempting to guide the engine, and he said to the boy, "Turn it this way."   The road was about 12 feet wide, of hard gravel surface, with a ditch on either side. When speaking to the boy, he took his eyes off his work for an instant, and that was when his hand was caught in the gears.   The oil can was an ordinary one with a

short spout. The gears were very rusty, and it was necessary to keep them lubricated. The rusty surface of the metal would not stand the impact of the cogs, but would scale off. There was no other position and no other manner in which to oil the gears with that kind of oil. With regular gear grease, the proper way would have been to use a paddle. Hufford never told Livingston not to oil the engine while in motion, nor did he ever instruct him how to oil it. There was part of a guard covering location where idler and compensation gear mesh. The top half of the guard which comes over the spur gear was broken off. It was all rusted. There was no part of the engine that was not rusted. (Livingston testified that he could not have adequately oiled the gears while the engine was not in motion.) On the evening before the accident Livingston had a conversation concerning the boy, Ivan Foster, in which conversation Livingston said: "The boy has been with me on trips before, and he is not famliar with that kind of work. He is practically no help to me. There is another boy here who is more familiar with the work, and I will get him." Hufford answered: "It will probably be the only engine you will have to move this Spring, and you can get by with this boy." Just as the engine started from the woods, Hufford said to the boy, "Ivan, you go on there now and help Dale." Hufford started homeward in his automobile and John Foster followed him in the Ford truck. Hufford was about 30 rods away when the accident occurred.

Dausman, J., after making the foregoing statement:

It is obvious that the Industrial Board was justified in finding that the workman received his injury by accident arising out of and in the course of his employment. In other words, that finding is a legitimate conclusion drawn from the evidence. It may be that the workman manifested very poor judg-

ment in determining the manner and method of oiling the machine, and it may be that his conduct in that respect was negligent; but the element of negligence has no place in the Workmen's Compensation Law. *Nordyke, etc., Co.* v. *Swift* (1919), 71 Ind. App. 176, 123 N. E. 449; *Great Lakes Dredge, etc., Co.* v. *Totzke* (1919), 69 Ind. App. 303, 121 N. E. 675.

Appellant contends, however, that the workman was doing his work "in a perilous and unreasonable way" and that therefore it should not be held that the injury arose out of and in the course of his employment. In support of the contention appellant relies on the case of *Inland Steel Co.* v. *Lambert* (1917), 66 Ind. App. 246, 118 N. E. 162. As to the proposition that whether an injury arises out of and in the course of the employment is a conclusion of law and not an ultimate fact, the Lambert case has been overruled. *Muncie Foundry, etc., Co.* v. *Thompson* (1919), 70 Ind. App. 157, 123 N. E. 196; *Empire Health, etc., Ins. Co.* v. *Purcell* (1921), 76 Ind. App. 551, 132 N. E. 664. We are dealing now with a question of fact.

The query, Was the workman doing his work "in a perilous and unreasonable way?" signifies nothing more or less than the query, Was he doing his work in a negligent way? That inquiry differs radically from the inquiry raised by the following questions: Was the workman entirely outside the scope of his employment? Had he departed from the line of duty? Was he doing something not incidental to his employment? With these questions in mind, we scrutinize the Lambert case and find that it is readily distinguishable from the case at bar. The Lambert case contains the following significant statement:

"In our judgment the facts do not present a situation wherein the employe negligently performed a duty, or was guilty of negligence in the performance of a duty,

but rather a case wherein he attempted unnecessarily to do a perilous act, not reasonably incident to his employment."

Whether at the time of the accident Livingston was doing something not within the scope of his employment, was a question primarily for the Industrial Board. It cannot be contended seriously that as to that feature the finding of the board is so unreasonable as to require that it be set aside. Indeed it may be said that the evidence excludes the theory that at the time of the accident the workman was doing something aside from the main purpose and design. The task assigned to him was to drive the engine a distance of twenty miles to his employer's shop. The Industrial Board, having considered the evidence, may have been convinced that a traction engine which had remained idle and without shelter for six years, on being again set to work, would need lubrication; that it was necessary to apply the soft oil—that being the only lubricating material furnished—in order that the engine might be brought by its own power to the shop; and that at the time of the accident Livingston was engaged in doing that which was essential to the proper discharge of his duty and to the achievement of the main purpose. If the board adopted that view, we could not disturb its ultimate conclusion, even if the inquiry here were limited to that theory. Furthermore, if the Industrial Board was of the opinion that Livingston was negligent in the manner of lubricating the gears, considering the material and appliances at hand for that purpose—in applying the oil while the engine was in motion, in walking sidewise or backward at the side of the slowly moving engine, or in permitting the boy to guide the engine, that negligence would not inhibit the finding that the injury arose out of and in the course of the employment. On the contrary, it was the duty

of the board to ignore the element of negligence. *National Car Coupler Co.* v. *Marr* (1919), 69 Ind. App. 206, 121 N. E. 545; *Peru Basket Co.* v. *Kuntz* (1919), 69 Ind. App. 510, 122 N. E. 349; *Nordyke, etc., Co.* v. *Swift, supra.*

It does not necessarily follow, in every case, that a workman is entitled to compensation where his injury by accident arises out of and in the course of his employment. Our statute contains the following:

"Sec. 8. No compensation shall be allowed for an injury or death due to (1) the employe's intentionally self-inflicted injury, (2) his intoxication, (3) his commission of a felony or misdemeanor, (4) his wilful failure or refusal to use a safety appliance, (5) his wilful failure or refusal to obey a reasonable written or printed rule of the employer, which has been posted in a conspicuous place, (6) his wilful failure or refusal to perform any statutory duty, or (7) to any other wilful misconduct on his part. The burden of proof shall be on the defendant." Acts 1919 p. 158, §8020r Burns' Supp. 1921. (The numerals appearing in the quotation have been inserted by the court for convenience only.)

The following is the contention of appellant's counsel, stated in their own words: "The appellee was guilty of wilful misconduct in taking upon himself the extreme hazard of attempting to lubricate the traction gear while the engine was running; and to do so, he placed himself in a perilous and dangerous position, thereby causing the resulting injury. * * *

"The guard over the mesh of the gear was thereon to safeguard and to warn workmen against dangers such as caused the injury to appellee. The idler, the spur wheel and the fly wheel were all in motion and plainly visible to the appellee, and the danger of injury was clearly manifest; and the act of appellee, undertaken in

the manner it was, manifested a wanton indifference and a wilful and reckless disregard of all caution and precaution, constituting wilful misconduct under the statute."

Although an injury by accident arises out of and in the course of the employment, nevertheless compensation must be denied if the injury would not have occurred but for one of the things or conditions specified in §8, *supra*. The first six of those conditions or things which will deprive a workman of compensation are definitely stated; and there is no evidence tending in the slightest degree to bring this case within any one of the six. If, then, Livingston is to be deprived of compensation, it must be because he is guilty of some wilful misconduct within the seventh provision. Counsel for the employer filed a special answer in which they averred the facts which they contend show that the workman, at the time of the accident, was doing his work in a perilous and unreasonable way, and which they urge constitute wilful misconduct. But the Industrial Board has made no finding on the issue of wilful misconduct; and the absence of such a finding is equivalent to a finding against the employer on that issue. We will not disturb the action of the board.

The award is affirmed.

### DISSENTING OPINION.

DAUSMAN, J., dissenting in part.

The concluding part of the foregoing opinion as originally written, has been omitted because it did not meet the approval of my associates. I feel, however, that it is my duty to add a brief statement on my own responsibility.

In the result reached, I heartily concur; but it seems to me that the court has disposed of appellant's second contention in a manner quite indefensible. The effect

of the opinion is to hold that the Industrial Board did not err in deciding (constructively) that the manner and method in which Livingston did his work, does not constitute wilful misconduct within the meaning of the seventh provision of §8 of the statute. Acts 1919 p. 158, §8020r Burns' Supp. 1921. But we do not know why the board's finding of facts is silent as to that feature. The failure to state its decision on that issue may be a mere inadvertence; or the board may have been of the opinion that it is not authorized to determine what does or does not constitute wilful misconduct within the meaning of the seventh provision of §8, *supra.* If we assume that the board did actually decide that Livingston is not chargeable with any wilful misconduct, then how is the court to say whether or not the board thereby committed error? In order that we may determine whether or not Livingston is chargeable with wilful misconduct we must first know what sort of conduct constitutes "other wilful misconduct" within the meaning of the seventh provision of §8, *supra.* We may determine, within the legitimate province of the court, what the legislature meant by the word "wilful;" for that word has often been considered by the courts. *Haskell, etc., Car Co.* v. *Kay* (1918), 69 Ind. App. 545, 119 N. E. 811. But how are we to determine what constitutes misconduct within the legislative intent? By what standard are we to determine what constitutes "other wilful misconduct?" If the Industrial Board had decided that Livingston is guilty of wilful misconduct, on what theory could this court reverse that decision? Exactly what wilful misconduct, other than that stated in the first six specifications in §8, *supra,* did the legislature intend should be so reprehensible as to deprive a workman and his dependents of the benefits of the compensation law? My candid answer is, I do not know. And that answer should be the answer of

the court.  The expression "any other wilful misconduct" is comprehensive enough to include an unlimited variety of opinions as to what ought to be regarded as sufficient to banish a workman or his dependents from the realm of the compensation law.  Is it wise or safe or allowable, that either the Industrial Board or this court should have the power to say what specific act or succession of acts on the part of a workman shall constitute such misconduct, wrong conduct, misbehaviour, or mismanagement as shall be sufficient to bar compensation, where wilfully done?  The Industrial Board is an administrative body under the executive department of the state government, and its duty is to execute the legislative will.  This court is, of course, a part of the judicial department; and if the court should attempt to say what specific things shall be embraced within the seventh provision, which is broad and general, it would be engaging in either judicial legislation or judicial jugglery.  Any decision on this feature by either the Industrial Board or the court must rest wholly on conjecture.  In my opinion the court should hold that the last provision of §8, *supra,* is unenforceable.

It should be noted, however, that in two cases we came near saying that under the original §8 (Acts 1915 p. 392) wilful disobedience of an order would constitute wilful misconduct; but we did not so decide, for the reason that neither case required a decision on that point. *Northern Ind. Gas, etc., Co.* v. *Pietzvak* (1917), 69 Ind. App. 24, 118 N. E. 132; *Peru Basket Co.* v. *Kuntz* (1919), 69 Ind. App. 510, 122 N. E. 349.