SMITH v. LESLIE ET AL.

[No. 12,261. Filed March 10, 1926. Rehearing denied July 2, 1926. Petition for transfer dismissed October 6, 1926.]

1. MASTER AND SERVANT.—*Doing work contrary to employer's directions does not affect question of injury arising from employment.*—The fact that an injured employee was performing his work contrary to the directions of his employer does not have any bearing on the question whether the injury arose out of the employment, but can be considered only in connection with the question of wilful misconduct under §8 of the Workmen's Compensation Act (§9453 Burns 1926). p. 189.

2. MASTER AND SERVANT.—*Rule for determining when accident arose out of employment stated.*—An accident is said to arise out of the employment when there is apparent to a rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work was required to be performed and the resulting injury. p. 190.

3. MASTER AND SERVANT.—*Industrial Board's finding that injury to employee arose out of the employment sustained.*—The Industrial Board's finding that employee's injury arose out of his employment was sustained by sufficient evidence where it was shown that in delivering lumber for his employer, he used a tractor to pull the loaded truck out of a mire and truck and tractor collided. p. 190.

4. MASTER AND SERVANT.—Evidence before the Industrial Board in compensation case *held* sufficient to sustain the inference that contributions of deceased employee to members of his father's family were reasonably necessary for their support. p. 191.

5. INFANTS.—Emancipation of a child will not be presumed, but must be established by competent evidence. p. 192.

6. MASTER AND SERVANT.—*Evidence in compensation case held to sustain finding of partial emancipation only of minor son affecting dependency of family upon him.*—In a compensation proceeding under the Workmen's Compensation Act for the death of a boy twenty years of age, who collected his own wages, paid for his own clothing and other expenses, but lived at home with his parents, and contributed a certain sum each week to his mother, the evidence was sufficient to sustain a finding of partial emancipation only, so that there was no legal liability to pay for board and lodging, and, therefore, such amount was not to be deducted from his contributions in determining the question of dependency of the family. p. 192.

7. MASTER AND SERVANT.—*Finding of dependency on minor son sustained by the evidence.*—In a compensation proceeding under the Workmen's Compensation Act for the death of a boy of

twenty, who lived at home with his parents and contributed from $5 to $7 per week for the support of his mother and two sisters, a finding of dependency held sustained by the evidence.   p. 193.

From Industrial Board of Indiana.

Claim for compensation under the Workmen's Compensation Act by Tilman Leslie and others for the death of Kahel Leslie, opposed by J. P. Smith, employer. From an award to claimants other than the one named, the employer appeals. *Affirmed.* By the court in banc.

*Ward H. Watson* and *Sol H. Esarey,* for appellant.
*Rabb, Mahoney, Fansler & Douglass,* for appellees.

REMY, J.—Kahel Leslie lost his life while in the employment of appellant. Appellees, as partial dependents, made application for compensation, and an award of $3.85 per week for 300 weeks was made to appellees, other than Tilman Leslie, whose application was denied. Appellees to whom the award was made are the mother and sisters of the deceased. From the award, this appeal is prosecuted.

It is urged by appellant that the award is not sustained by sufficient evidence, for two reasons: (1) That there is no evidence that the accident which resulted in the death of the employee arose out of his employment; and (2) that there is no evidence that the appellees to whom compensation was awarded were, at the time, dependents of the employee.

It appears from the evidence that on the day of the accident, and by the use of an automobile truck, Kahel Leslie, as appellant's employee, was engaged in hauling lumber from appellant's lumber yard in the town of Camden to a certain garage in the same town, and had been so engaged the previous day; that, in delivering the lumber, travel was for the most part over a paved street; but that, just before reaching the garage, it was necessary to pass over an unpaved driveway where the

roadbed was muddy; that at the time in question, and while deceased with the truck loaded with lumber was proceeding over the unimproved driveway, the truck became mired; that thereupon deceased, assisted by an employee of the owner of the garage, took from the garage a tractor which he attached to the truck by means of a rope; when so attached, decedent started the tractor, and caused it to pull the truck out of the mire and to the point where the lumber was to be unloaded, at which point the tractor was stopped; that because of its momentum the truck did not stop simultaneously with the stopping of the tractor, but ran forward against the tractor, the collision resulting in the fatal injury. A foreman of appellant testified that on the day previous to the accident decedent had told him that "the alley leading to the garage was bad; that he could not pull through with the truck, and that they had been using the tractor to pull the loaded truck where they wanted it. When he told me, I then strictly forbid him doing that. I told him I had nothing to do with the tractor; that if they could not finish the road to deliver the lumber where they wanted it, to go as far as he could and unload it; that our liability ceased at the end of the road."

Kahel Leslie at the time of his injury and death was twenty years of age, and resided with his father's family which consisted, besides himself, of Tilman Leslie the father, Bessie Leslie the mother, two sisters Frances and Esther Leslie, aged respectively seven and nine years, and two brothers aged fourteen and seventeen years. The father, who was in poor health, was a wage earner, and as such received $100 per month when he was able to work. The mother gave all her time to cooking, sewing and doing other household work for the family. The brothers of Kahel were not regularly employed, and the sisters were too young to earn wages.

Kahel's wages were $15 per week, and were paid directly to him. He paid nothing for his lodging and board, but bought his own clothes and furnished his own spending money; from his wages he paid to his mother each week from $5 to $7. A large part of the money contributed by him was used for clothing and school books for his sisters. The parents had no income except the wages received by the father and the money contributed by Kahel.

Appellant filed no special answer of wilful misconduct; did not defend on that ground at the hearing; and on appeal makes no such claim. On the contrary,

1. he states in his brief, as his counsel stated in the oral argument: "This is not a case of violation of orders." Having expressly waived any defense he may have had under §8 of the Workmen's Compensation Act (Acts 1919 p. 158), for wilful misconduct, appellant's contention is, that inasmuch as the foreman testified that decedent, at the time he received the injury, was doing the work to which he had been assigned in a way "strictly forbidden," it necessarily follows that the accident did not arise out of decedent's employment, the burden as to that issue being upon the claimants. In this appellant is in error. As was correctly stated by this court, in *Peru Basket Co.* v. *Kuntz* (1919), 69 Ind. App. 510, 122 N. E. 349: "The fact that a workman, at the time he receives an injury, is acting in violation of directions given him by his employer does not preclude the injury from arising out of the employment. The effect of the failure to obey instructions must be considered under §8 of the Workmen's Compensation Act." Acts 1919 p. 158. To the same effect, see, *Nat. Car Coupler* v. *Marr* (1919), 69 Ind. App. 206, 121 N. E. 545, in which case, in discussing the question as to the right of compensation of dependents where the employee was violating instructions at the time he

lost his life, this court said: "It would be illogical to hold that his death did not arise out of the employment, even if it should be conceded that he violated instructions. The insistence that he violated instructions has no bearing on the point. It goes rather to the question of wilful misconduct. But we may not even intimate an opinion as to what it would be worth in that direction; for appellant has waived it by expressly abandoning its second paragraph of answer." The second paragraph referred to was for wilful misconduct. See, also, *Nordyke, etc., Co.* v. *Swift* (1919), 71 Ind. App. 176, 123 N. E. 447.

A part of the record in this case is a written opinion by members of the Industrial Board, in which opinion are stated the reasons of the board for holding that the death of the employee arose out of his employment. In that opinion, we find the following paragraph: "The board is not required to deal with that portion of the testimony of the manager and superintendent of the company, who has been ten years in the employ of defendant, relative to the alleged disobedience of reasonable orders and directions by the decedent, as improbable as it may appear in the light of subsequent conduct of the employee, and then tested by the rule of human experience." From this statement, it seems clear that little or no credence was given to the testimony of the foreman by the members of the board who saw and heard him testify, and that the finding of the board would have been the same, if appellant had not waived the defence of wilful misconduct.

An accident is said to arise "out of the employment, when there is apparent to the rational mind, upon a consideration of all the circumstances, a causal 2, 3. connection between the conditions under which the work was required to be performed and the resulting injury." *United Paperboard Co.* v. *Lewis*

(1917), 65 Ind. App. 356, 117 N. E. 276; *Empire Health, etc., Ins. Co.* v. *Purcell* (1921), 76 Ind. App. 551, 132 N. E. 664. In the case of *Nordyke, etc., Co.* v. *Swift, supra,* this court had under consideration the question as to whether an employee's injury arose out of his employment, where he at the time of his injury was not performing his work as directed. The court in the course of its opinion said: "In this connection it should be observed that the Workmen's Compensation Act * * * does not limit compensation to cases where an injury is received by an employee while he is performing his work in the usual and customary manner or in the way directed. It is a fair inference that, if the legislature had intended to so limit the right to compensation, appropriate language would have been used to indicate such fact. We are therefore justified in refusing to give it such a narrow construction, and in holding that an employee, who in an honest attempt to discharge a duty assigned him, does an act incidental thereto not specifically directed, or departs from the usual methods of performing his work, does not thereby necessarily deprive himself, or his dependents, of a right to compensation, if injured while so engaged."

In the case at bar, the decedent at the time of his injury was engaged in operating the tractor in an endeavor to accomplish the work to which he was assigned. Clearly there is some evidence to support the finding of the board that the death of the employee was the result of an accident which arose out of his employment.

Except that he paid for his own clothes, furnished his own spending money, and made the weekly payment to his mother of from $5 to $7, he lived at home as a member of the family, the same as his brothers and sisters. A large part of the money contributed by Kahel was used for clothing and school books for his sisters. The parents had no in-

come except the wages received by the father and that contributed by the son. At the hearing, in response to a question propounded by a member of the Industrial Board, the mother as a witness testified that the weekly contributions made by the son were necessary for the proper support of herself and her daughters. In response to a similar question, the father testified that they were necessary. There is other evidence from which the Industrial Board might have inferred that the weekly contributions of the deceased were reasonably necessary for the support of the family.

It is urged by appellant that the evidence shows that the deceased son, though but twenty years of age, had been emancipated, was boarding and rooming at the home of his parents, that the amount of his weekly contribution was no more than sufficient to pay for his board and lodging, and that it necessarily follows that he was making no contribution toward the support of his mother and sisters, and that there is, therefore, no evidence that his mother and sisters were his partial dependents, as found by the Industrial Board.

The question of the boy's emancipation becomes important. Emancipation will not be presumed. It must be established by competent evidence. *Sumner*. 5, 6. v. *Sebec* (1824), 3 Me. (3 Greene) 223. Emancipation may be either complete or partial. As was said by the Supreme Court of Minnesota, in *Lufkin* v. *Harvey* (1915), 131 Minn. 238, 154 N. W. 1097, L. R. A. 1916B 1111, Ann. Cas. 1917D 583: "A minor may be emancipated for some purposes and not for others. The parent may authorize his minor child to make contracts of employment and collect and spend the money earned and still not emancipate him from parental custody and control." In the case at bar, there is evidence from which the Industrial Board might have found that the emancipation of Kahel Leslie was but

Chicago, etc., R. Co. *v.* American Trust Co.—85 Ind. App. 193.

partial; that there had been no emancipation from parental custody and control; and that the boy was merely permitted to collect and spend his own wages. If such was the finding, there was, of course, no legal liability on his part to pay for his board and lodging, the cost of which the Industrial Board was not required to deduct from his wages, in determining the question of dependency.

· We hold that there is sufficient evidence to sustain the finding of the Industrial Board that the 7. mother and sisters of the employee were his dependents at the time of his death.

Affirmed.